## APPEAL OF JOHN A. BRANDER.

Docket No. 4080.    Submitted August 17, 1925.    Decided December 23, 1925.

1. Ordinarily, a taxpayer who keeps no books or records of account can not be on an accrual basis.

2. The proof in this case is insufficient to establish that the taxpayer's individual accounts were kept in the books of a corporation of which he was an officer. Upon the evidence, *held*, that the cash receipts and disbursements method of returning income was proper.

3. Salary credited to but not received by the taxpayer in the taxable year, as an officer of a corporation which was controlled by the taxpayer and another person and which was able to pay such salary, *held*, to have been received constructively.

4. Deduction for depreciation on a pleasure yacht as property used in business, claimed because the yacht was used largely for entertaining present or prospective customers of a corporation of which taxpayer was president and a salesman, not allowed.

*R. K. Slaughter*, *Esq.*, for the taxpayer.
*George G. Witter*, *Esq.*, for the Commissioner.

## Before STERNHAGEN and LOVE.

The taxpayer appeals from the determination of a deficiency of $7,382.82 in income and profits taxes for 1919. He alleges that the Commissioner erred in including in income salary credited to but not received by the taxpayer in the taxable year; and in disallowing depreciation on a yacht claimed to have been used in business. The petition also contains allegations relative to the denial by the Commissioner of claims in abatement for the years 1917 to 1920, inclusive, which were withdrawn by the taxpayer at the hearing.

### FINDINGS OF FACT.

Taxpayer was president of Brander & Curry, Inc., which was organized by him and Chester M. Curry in 1915. They were the principal stockholders and together controlled the corporation. Its business was to act as selling agent for manufacturers, and it dealt principally in cotton fabrics used in the automobile industry. Chester M. Curry was treasurer and Lewis W. Brander was vice president. All three officers acted as salesmen. They, together with a brother of Curry, constituted the board of directors.

The taxpayer originally made his income-tax return on an accrual basis, and reported receiving from Brander & Curry, Inc., salary and commissions of $115,166. In 1922 he filed an amended return on the basis of cash receipts and disbursements and reported receipts of $112,661.51 as salary and commissions. He kept no separate books of account of his own. The original return was prepared by a public accountant from the books of the corporation, which were kept on an accrual basis.

The total amounts credited and withdrawn each year from 1917 to 1919, inclusive, in the account of the taxpayer on the books of the corporation were:

| Year. | Credited. | Withdrawn. |
|---|---|---|
| 1917 | $58,324.15 | $18,049.63 |
| 1918 | 20,000.00 | 16,204.94 |
| 1919 | 115,166.00 | 112,661.51 |

The credit balances of the officers on the books of the corporation at the beginning and at the close of the taxable year are as follows:

|  | Dec. 31, 1918. | Dec. 31, 1919. |
|---|---|---|
| John A. Brander | $44,069.54 | $46,974.03 |
| C. M. Curry | 43,058.44 | 48,561.44 |
| L. W. Brander | 26,749.32 | 35,807.55 |
| Total | 113,877.30 | 131,343.02 |

The cash on hand at the beginning of the year 1919 was $15,-352.62; at the close of the year it was $47,975.92. The surplus at the beginning of the year was $28,017.48; at the close, $114,336.66. The total amount credited to officers in 1919 exceeded the amount withdrawn by $17,465.72.

On December 31, 1918, the corporation had investments in stock and bonds aggregating $90,525.08; on December 31, 1919, $286,-619.73. These investments were mainly in the shares of stock of corporations with which Brander & Curry, Inc., did business. Its outstanding stock was $25,000.

The earnings of the corporation in 1919, after deducting all salaries and expenses, were sufficient to have paid a dividend of 350 per cent on the outstanding capital stock and 150 per cent on the combined capital and surplus at December 31, 1918.

The corporation paid for its purchases within 10 days or monthly, and extended credit to its customers of from 60 to 90 days. All of its assets were pledged with banks or commercial bankers for loans.

In the summer of 1919 the taxpayer purchased a motor yacht for $7,000. He later spent about $60,000 in remodeling, redecorating, and refitting it. He claims depreciation of $13,327.40, at the rate of 20 per cent on a total cost of $66,637.40. From the date of purchase until the early part of January, 1920, the yacht was being remodeled and was not put into service until that month. It was used largely for entertaining officials of companies with whom Brander & Curry, Inc., did business or hoped to do business. The purpose of the taxpayer was to have pleasant association with persons whose acquaintance might be of business advantage and to impress them with his social and business standing. He frequently loaned the yacht to these persons. On one occasion, when the yacht was being used by a customer, the taxpayer conferred about a transaction which ultimately yielded the corporation of Brander & Curry, Inc., large profits for several years. The yacht gave the taxpayer pleasure and conserved his health. The expenses of operating the yacht were borne by him.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

STERNHAGEN : When the taxpayer filed his original return he had had it prepared by a firm of certified public accountants upon whose advice he relied. He had no individual account books and it is said that the return was prepared from the data contained in the books of the corporation of which he was one of the two dominating stockholders. The return stated upon its face that it showed income accrued and not income received, and the amounts of income and deductions were shown to be as follows:

### INCOME.

| | | |
|---|---:|---:|
| Salaries and commissions as president and salesman from Brander & Curry, Inc | $115, 166. 00 | |
| Dividends received directly | 512. 50 | |
| | | $115, 678. 50 |

### DEDUCTIONS.

| | | |
|---|---:|---:|
| Interest paid | 2, 434. 89 | |
| Depreciation on yacht used for business purposes, cost $66,637.00 at 20 per cent | 13, 327. 40 | |
| Loss on stock market transactions | 7, 386. 00 | |
| Burglary: Jewelry stolen | 2,000. 00 | |
| Country club bond stolen | 500. 00 | |
| | | 25, 648. 29 |
| | | 90, 030. 21 |

After audit and investigation the Commissioner disallowed the depreciation on the yacht as a deduction. The taxpayer then, without securing any previous consent from the Commissioner, filed an amended return purporting to show income received instead of income accrued, and he now insists that this is the proper method of determining his taxable income. Upon this method, he contends, he is taxable not upon the amount of salary and commissions of $115,166 which had accrued to him as shown by the corporation's books, but only upon the amount of $112,661.51, which he actually received during the taxable year. That he actually received only this amount is not disputed, but the Commissioner contends that the taxable income should be determined by the accrual method as originally adopted by the taxpayer; or, if the receipts method be used, the entire amount of $115,166 should nevertheless be included because the circumstances are such as to impute to the taxpayer the constructive receipt of the $2,904.49 entered upon the corporation's books as a credit to him (and deducted by it on its return) but not actually paid.

There is no foundation in this record upon which it can be said that the method of accounting regularly employed in keeping the taxpayer's books of account is the accrual method. He had no method of accounting, for he kept no books, and, except in an extraordinary case, which does not now come to mind, an accrual method without accounting records is an anomaly. Such a method is inherently an accounting system whereby one is enabled not merely to record receipts and payments after they take place but to keep track of his financial rights and obligations under a credit system. Even a simple practice of accruals would require systematic accounting and some sort of bookkeeping. Without records it may generally be concluded that the cash method is being used. But the Commissioner says that the taxpayer did have books, in effect, for his accounts were kept on the books of the corporation, and that from these his tax return was compiled. This is not to be assumed, and the proof is not convincing. It appears only that the single item of salary and commissions was taken from the corporation's books. Whether all the remaining items of dividends, interest, depreciation, and losses also appear there is not established. We hold, therefore, that the receipts method may properly be used as the tax-payer claims.

The Commissioner then contends that the situation is such as to constitute a constructive receipt by the taxpayer, and cites article 53 of Regulations 45. This doctrine, as we have made clear in several appeals, is not to be applied lightly, but only in situations where it is clearly justifiable. When taxable income is consistently computed by a citizen on the basis of actual receipts, a method which the law expressly gives him the right to use, he is not to be defeated in his *bona fide* selection of this method by " construing " that to be received of which in truth he has not had the use and enjoyment. Constructive receipt is an artificial concept which must be sparingly applied, lest it become a means for taxing something other than income and thus violating the Constitution itself. Doubtless, however, there are clear cases of constructive receipt, such, for example, as that of the bond owner who chooses not to cash his coupon but to permit it to remain uncut in the possession of another. He will not be heard to say that the amount of the coupon is not his income because he did not in fact receive it. The receipt is entirely within his own control and disposition. So, from the evidence, it seems to be in the present appeal. Brander and Curry were the sole owners of the business and all its assets. Brander, as president, could at any moment have elected to take the $2,904.49 as he did the $112,-661.51, and no one else could have prevented him. The corporation had sufficient assets to pay him and there was no one to dispute his

right to it. He contends that, as a practical matter, the assets were pledged, and hence beyond his disposition. But the pledge itself was his voluntary act. During the year he permitted the corporation to change its investments, and he could just as freely have permitted it to pay its salary debt to him. It was not that the corporation would not pay, but rather that he would not receive. This election to give the corporation the temporary use of the amount is an exercise by him of its enjoyment, and this is one of the primary attributes of income. The Commissioner therefore correctly determined that the taxpayer's income from salary and commission was $115,166.

The taxpayer purchased a yacht in the summer of 1919, for which he then paid $7,000. Before the yacht could be used it was necessary to have it overhauled and substantially repaired and reconditioned. This was not completed until 1920 and the cost was over $60,000. When this was paid does not appear in the record. Hence, in no event could there be an allowance for exhaustion of more than half a year upon the basis of $7,000, upon the evidence before us. But it is our opinion that no depreciation whatever may be recognized as a deduction.

A yacht is essentially a luxury. It is an instrument of pleasure and comfort which none but the wealthy can afford. It is not ordinarily regarded as a business facility. But it is argued that, however this may be ordinarily, this yacht was bought and used as a business facility; and this was its sole reason for existence. Curry, in testifying in his companion appeal [*infra*, 237], said that the reason why these vessels were not purchased and owned by the corporation was that he and Brander wanted to continue as members of the New York Yacht Club and could do so only if they were yacht owners. Corporate yacht owners were not admitted to membership because yachting is not regarded as a commercial activity but as " a gentlemen's game." Notwithstanding this, however, it is contended that in fact the yacht was property used in Brander's trade or business of earning salary and commissions from the corporation. Brander had tried for some time to build up his business through the subordinates of his customers and this was not sufficiently profitable. So he decided to " work on the men higher up," and this required activities of a social nature. He must live on their scale, offer them comforts and conveniences such as he thought they were accustomed to, and entertain them elaborately. So he joined clubs in the city and the country, bought automobiles, and finally a yacht. Sometimes he placed these entirely at the disposal of his business acquaintances and sometimes he went along. The purpose in this was to develop friendship in the hope of business profits. The story is familiar to all. In its essence it is the promotion of good will. It is the traditional drummer's free cigar.

Sometimes it takes the form of the local seller inviting the foreign buyer to his home for dinner or to his club for lunch or to his country club for golf. Sometimes it is subtle and sometimes obvious. Some there are who have no social interest except as it may be helpful to earnings. Thus the manufacturer makes friends with the wholesaler, the builder with the architect and the rubber merchant with the tire maker.

What we have said indicates the scope of the taxpayer's argument. It becomes a question of degree and not one of defined principle. Merely because a social asset is also a business advantage, it is not to be said that its exhaustion is an item of business deduction. The yacht in the present appeal is a social instrument of this character and we hold that its exhaustion may not be deducted.

SMITH dissenting.

*R. K. Slaughter, Esq.*, for the taxpayer.
*George G. Witter, Esq.*, for the Commissioner.

