W. D. V. Hopkins v. Commissioner.
Hopkins v. Commissioner
Docket No. 109887.
United States Tax Court
1943 Tax Ct. Memo LEXIS 90; 2 T.C.M. (CCH) 895; T.C.M. (RIA) 43448; October 5, 1943
*90 A. W. Clapp, Esq., and Roy Karshner, C.P.A., for the petitioner. F. L. Van Haaften, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: In this case we are asked to redetermine a deficiency of $3,292.62 in income tax for 1936, all of which is involved. The questions presented are whether the petitioner had certain income from salary and whether the statute of limitation had run upon assessment. An additional question as to the year 1938, for which the Commissioner determined a deficiency of $201.61 has not been the subject of either brief or evidence by the petitioner and is considered abandoned. Findings of Fact The return for the taxable year was filed with the collector for the district of Georgia. The petitioner during 1936 and subsequent years was president and general manager of Hopkins Equipment Co., a corporation (hereinafter called Equipment) of which he-held 120 shares out of 130 shares issued. The other 10 shares were held by E. H. Edwards, secretary of the corporation. Under date of January 9, 1936, the corporate minutes with respect to action taken by the directors as to salaries, provided that: "Compensation to the officers and *91 employees of the company for the year 1936 be left to the discretion of the president of the company." This was the only formal corporate action on the subject in either minutes or by-laws. During 1936, $20,000 was credited on the books of the company to the petitioner's account for salary. It was the custom of the company to wait until the end of the year and the making of an audit in order to determine the amount to be drawn in cash on salaries. The petitioner actually withdrew in cash during 1936 the sum of $5,338.50, leaving the remainder $14,661.50 to his credit on the company's books. The salaries of the secretary and head salesman were likewise only drawn in part. The corporation on its income tax return for 1936 deducted the entire $20,000 as compensation paid. The Hopkins Equipment Co. distributed the products of the manufacturers of Norge refrigerators and of the Zenith Radio Corporation. Both had high pressure sales tactics, and the Norge distributors did not have storage capacity for their production, which was at a peak during the winter months. Equipment was by these manufacturers required to buy heavily in the winter months on sight draft with bill of lading attached, *92 and to put in orders in December for delivery in January, February and March. Equipment was informed by Zenith in December that it would have to buy rather heavily upon the first quarter of 1937. Equipment did not have sufficient cash to pay the manufacturers for such purchases and pay its officers' salaries in full. It had in 1936 a line of credit at a bank to the extent of $15,000 or $20,000, and borrowed about the limit during the first few months of 1937. Before the end of 1936 it had some idea of what carload deliveries it would receive in January, February and March, 1937. The balance sheet of Equipment on December 31, 1936, was as follows: Assets
12-31-36
Cash
$ 12,955.14
Trade Acceptances & Notes
5,950.50
Accounts Receivable
44,975.25
Inventories
53,406.72
Stock in Domestic Corporations
8,507.31
Accrued Dividends
15.00
Prepared Insurance
750.43
Prepaid Donations
35.00
Furniture & Fixtures
4,042.72
Autos & Trucks
2,879.00
Small Tools
499.21
Reserve for Depreciation
4,047.08
Deposit - Georgia Power Com-
pany
25.00
Due from Officers & Employees
1,960.49
Advertising
Total
$131,954.69
Liabilities
Trade Acceptances
$ 26,176.00
Accounts Payable
12,045.05
Accrued Taxes
1,230.42
Lacquer Guarantee
1,116.63
Due to Officers & Employees
24,965.31
Reserved for State & Federal In-
come Taxes
2,378.32
Capital Stock
13,000.00
Surplus
51,042.96
Total
$131,954.69
*93 On March 15, 1937, it had cash in bank in the amount of $3,991.34, inventory of $68,325.32, liabilities for notes payable of $20,000, and a surplus of $55,809.65. Petitioner's income tax return for 1936 was filed March 17, 1937. Therein total income is listed as $24,907.93, and salary received from Hopkins Equipment Co. is return as $5,338.50. The petitioner did not include the $14,661.50 in his income return for either 1936 or 1937. The Commissioner included it in his income for each of the two years and collected the tax for 1937, on or about May 15, 1942. The deficiency notice for the taxable year 1936 was mailed on January 20, 1942. The $14,461.50 not reported and included in petitioner's income tax return was in excess of 25 per cent of the amount of gross income stated in the return. Opinion The deficiency notice was not mailed until more than three years after filing of petitioner's return, and respondent therefore, in response to petitioner's plea of statute of limitations, relies on section 275(c) of the Revenue Act of 1936, [1] on the theory that the petitioner omitted from gross income an amount properly includible therein in excess of 25 per cent of gross income as *94 stated in the return, so that the period of limitation is five years. Since the $14,461.50 is more than 25 per cent of the $24,907.93 total income stated in the return, and since petitioner's counsel at the trial stated there was no question in that regard, if, in fact, it constitutes income, our only question is whether the amount omitted was "properly includible" within the statute; and on this point, since it was not actually received by the petitioner, the parties appear to agree that the question is whether he constructively received the amount in 1936. If he did, then it was properly includible in his return and the statute of limitations has not run, the deficiency notice having been mailed within five years from the date the return was filed. *95 In effect, the situation is that the petitioner did not have actual income in the amount involved, but that the amount was included in $20,000 credited to him on the books of Equipment; and that the reason he did not draw the money was the business situation arising from the fact that two manufacturers of refrigerators and radios required Equipment to purchase heavily, during the first three months of each year, including 1937, and that therefore it was considered necessary to conserve the cash for that purpose instead of paying salaries. Equipment borrowed $20,000 during the early part of 1937. At the end of 1936 it had cash on hand of approximately $13,000, accounts receivable of about $45,000, trade acceptances and notes of about $6,000, inventory of $53,406.72, no notes payable, and a surplus of $51,042.96. By March 15, 1937, its cash in bank was $3,991.34, notes payable $20,000, inventory $68,325.32, and surplus $55,809.65. The petitioner owned 12/13ths of the corporate stock of Equipment, was its president and general manager and compensation of officers was left to his discretion. We think it apparent from the above that, though Equipment, and petitioner as president thereof, *96 considered it good business judgment not to pay salaries in full in 1936, nevertheless, that is not sufficient to prevent application of principles of constructive receipt. It will be noted that Equipment deducted the whole $20,000 as salary paid, yet petitioner, practically the owner of that corporation, wishes us to take the view that it was not received. That the financial condition of the company, in cash, receivables, inventory and surplus was amply sufficient for the discharge of the compensation can not be gainsaid. That the petitioner, in charge of the corporation affairs, could have, for the corporation, paid himself, is equally plain, for there was almost enough cash on hand to do so ($12,955.14 on hand against a salary item of $14,661.50) and $20,000 could be and was borrowed soon thereafter. The principles governing constructive receipt of income in our opinion dictate that the amount here was such. It had been credited to petitioner's account. It was wholly within his discretion, as president and general manager, whether it should be paid to him as salary. Thus only his disinclination to take down the money prevented its receipt, at least so far as cash was on hand. And *97 the record here plainly negatives any idea that the small remaining amount, above the cash, could not have been realized by borrowing or disposition of assets. In Jacobus v. United States, 9 Fed. Supp. 41, the Court of Claims considered facts not greatly dissimilar to those here involved, that is the plaintiff, president and in effect in charge of a family corporation, was seeking to avoid constructive receipt of salary, which was more than cash on hand, but there were corporate assets to cover the amount. The court pointed out that, "The cash in bank is only a part of the assets of a corporation. Many other items enter into its capital and surplus." And again, discussing the withdrawals of the amount credited to the plaintiff, "there was no inhibition upon plaintiff not to withdraw whatever amount he desired * * * he exercised a free hand." The petitioner refrained from obtaining his salary because of the idea that it was better business for the corporation to take care of other obligations with the money. We do not think this sufficient reason for saying that there was not constructive receipt, but was rather a mere favor done his corporation, a *98 gift, in a sense, of the use of the money - not something which should control his income tax liability. In John A. Brander, 3 B.T.A. 231, we held that the petitioner, president of a corporation under the control of the president and another, had elected to give the corporation the temporary use of the money in a situation analogous in principle and fact to that here involved. Though, of course, principles of constructive receipt of income will be sparingly applied, in our opinion the respondent has shown such constructive receipt by the petitioner here. Decision will be entered for the respondent, as to both taxable years. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - * * * * *
(c) Omission From Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩