Pearl Whitson v. Commissioner. L. R. Whitson v. Commissioner. Allene Roberts v. Commissioner. T. P. Roberts v. Commissioner.
Whitson v. Commissioner
Docket Nos. 2717, 2718, 2719, 2720.
United States Tax Court
1944 Tax Ct. Memo LEXIS 170; 3 T.C.M. (CCH) 746; T.C.M. (RIA) 44240; July 24, 1944
*170 Where petitioners on the cash basis sought to include in their 1940 income fees which were credited to them on the books of a corporation controlled by petitioners, but which were not paid until the following year, and it appeared that the amount of the fees exceeded the corporation's net earnings and cash balance for 1940, held, on the facts, the doctrine of constructive receipt does not apply, and the fees are income to petitioners for the year in which actually received. George S. Atkinson, Esq., for the petitioners. J. Marvin Kelley, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income taxes for the year 1941, as follows: Docket No.
Petitioner
Deficiency
2717
Pearl Whitson
$3,312.95
2718
L. R. Whitson
3,312.95
2719
Allene Roberts
3,004.14
2720
T. P. Roberts
3,004.14
The respondent also determined an over-assessment against the same petitioners for the year 1940. In so far as they alleged error as to this determination, the petitions were dismissed at the hearing for lack of jurisdiction. The sole issue now in controversy is whether income in the amount of $41,569.91 is properly *171 taxable to the petitioners in 1940 or in 1941. The petitioners contend that they constructively received this amount in 1940, and that it is, therefore, taxable to them in that year. The respondent contends that it is taxable to the petitioners in 1941. the year in which the amount was actually received by them. Other issues have been disposed of by stipulation and abandonment, necessitating a recomputation of the deficiencies under Rule 50. Findings of Fact The petitioners, L. R. Whitson and Pearl Whitson, his wife, and T. P. Roberts and Allene Roberts, his wife, are residents of Dallas, Texas. Their returns for the year in controversy were filed on the communty property basis and on the cash receipts and disbursements basis with the Collector of Internal Revenue for the second district of Texas. L. R. Whitson and T. P. Roberts, hereinafter referred to as the petitioners, are architects. During all the times herein material they, together with petitioner Roberts' family, owned the controlling interest in J. W. Crowdus Realty Company, a Texas corporation, hereinafter called the company. T. P. Roberts was president and L. R. Whitson was vice-president of the company. The company *172 was the owner of a building in Dallas, Texas, known as the Continental Building. On September 19, 1939, pursuant to a resolution of the company's board of directors, the petitioners entered into a contract with the company for the construction of eight additional floors to the Continental Building. The petitioners were to prepare plans and specifications, handle contracts, supervise construction and leasing, and make necessary financing arrangements, for a fee of 10 per cent of the construction cost, less certain costs and expenses. Under the terms of the contract, payment "shall be either in the form of cash or a second mortgage on the property, properly executed, on the completion of the job * * *." The work under the contract was finished in September 1940. The amount of $41,569.91 was determined to be the net fee due the petitioners. This amount was credited to them on the books of the company under date of December 31, 1940, as follows: Cash Journal
Date
General
Ledger
1940
Dr.
Cr.
Dec.
31
To set up Liability for fee due Whitson & Roberts covering
Supervision of Construction of 8 add. floors to Cont. Bldg.
Investment Acct-Cont. Bldg.
$41,569.91
Accounts Payable-Contract Agreement W&R
$41,569.91
*173 No part of this sum was paid to the petitioners in 1940. The company filed its income and declared value excess profits tax * return for the year 1940 on an accrual basis. In this return it reported a net income for 1940 of $23,833.21. It did not seek a deduction of the amount in question as a business expense, but treated it as a capital expenditure for 1940. The company's balance sheet as of January 1, 1940, and December 31, 1940, as shown on its income and declared value excess profits return for 1940, discloses the following: ASSETS
January 1, 1940
(Dec. 31, 1939)
December 31, 1940
Amount
Total
Amount
Total
1. Cash
$ 3,318.92
$ 16,678.92
2. Notes and accts. rec.
447.49
5. Suspense-Construction
23,865.42
6. (a) Buildings
$432,877.77
$945,557.70
Furn. & Fix. & Equip.
118.13
377.40
432,995.90
945,935.10
Less Res. for Depr.
46,220.03
386,775.87
57,913.64
888,021.46
(c) Land
$284,376.19
284,370.19
7. Unextinguished Loan Expenses
2,860.44
2,224.78
Prepaid Expenses
904.50
3,764.94
1,603.99
3,828.77
8. Total Assets
652,095.34
1,143,346.83
LIABILITIES
9. Accounts payable
$ 2,779.67
$ 41,569.91
10. Bonds, notes, & mtges. payable: (a) Maturity of less than one year
$ 23,654.13
$ 33,118.71
(b) Maturity of more than one year
215,325.00
238,979.13
625,400.00
658,518.71
11. Accrued expenses -
Taxes
5,196.87
Interest
41.84
5,238.71
4,581.48
12. Reserve for lease retirement
87,023.72
96,347.69
13. Reserve for Fed. Income Tax
6,999.00
14. Capital Stock -
(b) Common Stock
300,000.00
300,000.00
16. Earned surplus and undivided profits
18,074.11
35,330.04
17. Total Liabilities
$652,095.34
$1,143,346.83
*174 In 1941 the company reported net income of $51,448.15. Its cash balance at the end of 1941 was $7,106.58, and its earned surplus and undivided profits, $62,143.94. On December 31, 1940, the company was indebted to the Mercantile National Bank in Dallas in the sum of $33,118.71 on its unsecured note. However, it had a line of credit with this bank and could have borrowed on its unsecured and unendorsed note up to $290,000. At a regular meeting of the company's board of directors, held January 14, 1941, the petitioners presented their bill for architectural and leasing fees in the amount of $41,569.91, which was approved and accepted. The petitioners received a payment of $27,000 on August 5, 1941. This payment was made in the form of a check for $27,000 issued by the company to O.W.R. Oil Company, which was owned by the petitioners. It was intended as a loan to the O.W.R. Oil Company by the petitioners, who took the note of the latter corporation therefor. One-half of this amount was charged to the account of each of the petitioners on the books of the J. W. Crowdus Realty Company. On September 10, 1941, L. R. Whitson received a payment of $5,200, of which $5,000 was principal *175 and $200 interest. The balance of the fee was paid to the petitioners on October 25, 1941, together with interest of $2,275.13, including the $200 above mentioned. No interest was credited to petitioners on the books of the company during 1940. The petitioners and their respective wives filed separate returns for 1940, in which none of them included as income any part of the architectural fees. In April or May of 1941, a revenue agent examined the books and records of the petitioners in connection with their 1940 income tax liabilities. At that time he conferred with Whitson and with the company's accountant, and contended that the architectrual fees should have been included in the petitioners' taxable income for 1940. However, in his report, dated June 4, 1941, he did not include the architectural fees as taxable to the petitioners in 1940. Thereafter, on October 27, 1941, the petitioners filed amended returns for the year 1940, in which each reported as his or her income for that year, one-fourth of the amount of the architectural fees. In his deficiency notice, the respondent eliminated the amount of the architectural fees from the petitioners' 1940 income, and included it *176 in their income for 1941. Opinion ARUNDELL, Judge: The sole issue for our determination is whether architectural fees in the sum of $41,569.91 were constructively received by the petitioners in 1940. The petitioners contend that the fees were unreservedly credited to them on the books of the corporation and were unqualifiedly subject to their demand in 1940. They contend that they could have demanded and received payment at any time during that year but that they deliberately chose to loan the money to the company, rather than to withdraw it for their own uses. They argue that they, therefore, constructively received the fees in 1940, and are properly taxable upon them in that year. The respondent denies that the petitioners constructively received the fees in 1940, and contends that they constitute taxable income to the petitioners for 1941, the year in which they were actually received. The doctrine of constructive receipt is to be applied sparingly, and only in a case which clearly justifies its application. William H. C. Pletz, 43 B.T.A. 140; William A. Hines, 38 B.T.A. 1061; Samuel Keller Jacobs, 22 B.T.A. 1166; *177 Hal E. Roach, 20 B.T.A. 919. In Northern Trust Co., et al., Executors, 8 B.T.A. 685, we said that before it should be held that a taxpayer constructively received income in any taxable year when he did not, in fact, come into possession of the money or property, it should appear beyond question that the taxpayer, although at liberty to withdraw the amount due him, considering the financial requirements and needs of the corporation, deliberately chose not to receive the amount owing by the corporation. The test as to constructive receipt is whether the debtor has funds standing to the credit of the taxpayer which the debtor is able to pay and which are available and subject to the taxpayer's demands. William Parris, 20 B.T.A. 320; Samuel Keller Jacobs, supra. In the words of the Regulations (Reg. 103, Sec. 19.42-2): * * * To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must *178 be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * * Consequently, if the petitioners are to prevail, they must show that this test has been satisfactorily met. The evidence shows that the work under the contract was completed in September 1940. The fee due the petitioners was determined to be in the sum of $41,569.91 and this amount was credited to them at the end of the year on the books of the company. However, no part of it was actually paid during 1940, and the petitioners' bill was not actually accepted by the company until January 14, 1941. Furthermore, it appears that the company had no funds available during 1940 with which it could have paid the amount of the fee to the petitioners. At the end of that year the company had cash on hand of only $16,678.92, less than half of the amount of the fee. Its income tax return for the same year showed a net income of $23,833.21, substantially below the amount due the petitioners. The petitioners contend that being in control of the corporation, they could have demanded and received the amount of their fees at any time after completion of the work, but *179 that they loaned the money to the company, choosing to let it remain with the company, to be drawn out by them when they "really wanted to." This contention is not borne out by the evidence. The company did not issue any note or other evidence of indebtedness to the petitioners on account of this sum, nor was any corporate action taken acknowledging in any way a loan of this amount by the petitioners to the company. The petitioners concede that there is no formal evidence of the loan, but contend that there was an informal understanding between themselves, whereby they agreed not to draw the money out in 1940, and that had this informal agreement not been entered into, the company could easily have borrowed enough to pay them from the Mercantile National Bank. Petitioner Whitson testified that he and Roberts owned and controlled the building and that "it seemed silly" to borrow additional money from the bank and pay interest on it, when by leaving the money with the company they could avoid borrowing to that extent. It is undoubtedly true that had the petitioners demanded payment in 1940, the company could have borrowed sufficient money to pay the architectural fees, and they may *180 have considered that in not demanding payment they were, in effect, "loaning" the money to the company. But, this does not strengthen their position in the present case. The mere fact that the company might have borrowed sufficient money or might have sold some of its assets and realized sufficient cash to pay the petitioners the amount due does not make them in receipt of income on the cash basis. Northern Trust Co., et al., Executors, supra. Nor may we speculate upon what might have been done but was not done. Marian Otis Chandler, 16 B.T.A. 1248. It is a fact that in 1940, the company had no sums available or set apart for the petitioners which were subject to their unqualified demand and from which they could have withdrawn the amounts due them at any time during that year. The petitioners point to the interest payments to sustain their contention that they loaned the money to the company. However, the evidence on this point is not satisfactory. No interest was credited to the petitioners on the company's books during 1940, nor was any interest credited or paid to them in 1941 until September, when Whitson received *181 an interest payment of $200. It must be noted, however, that this was after the revenue agent had made his investigation and had suggested to the petitioners that the fees had been constructively received in 1940. The petitioners had not made any claim of constructive receipt prior to that time, and, in view of the evidence, we are impelled to the conclusion that these belated payments of interest were made more as an afterthought than as a part of the petitioners' original intentions. In support of their contentions the petitioners cite Jacobus v. United States, 9 Fed. Supp. 41, wherein the Court of Claims held that the taxpayer had constructively received the full amount of the salary credited to him on the books of the corporation, although only a part was actually withdrawn and the corporation did not have sufficient cash at the end of the year with which to pay the balance. In that case, the corporation, which was closely held, was engaged in the investment business on its own account and the accounts of its stockholders. Its policy was to invest most of its cash, keeping only a small balance on hand. The stockholders were accustomed to deposit *182 their own money with the corporation, which invested the amounts so deposited, paying interest to the depositors. The plaintiff and his brother were voting trustees of all the stock and had the sole control and management of the corporation. The net earnings of the corporation, after the deduction of expenses and the payment of a dividend on the capital stock, were divided between them as salaries. The plaintiff was at liberty to withdraw his full salary at any time and did make large withdrawals during the year. The corporation paid him interest on the sums which were not physically withdrawn and deducted the full amount of the salary credited to him on its income tax return. The court held that both the taxpayer and the corporation treated the amounts credited to him as payments, and that he was properly taxable upon those amounts during the year in which credited. We think that case is to be distinguished from the case before us. Here, the petitioners, while controlling a majority of the company's stock, did not have the absolute control of the corporation which the plaintiff had in the Jacobus case. There the amount involved represented the salary of an officer which had *183 been fixed at one-half of the net earnings of the corporation. The plaintiff was at liberty to withdraw the full amount of his salary at any time and did actually make large withdrawals during the year. Here, however, the sums due the petitioners were not owing to them as salary, but as fees for personal services. They did not become due until near the close of the year in which the services were performed, and their amount greatly exceeded the company's net earnings for that year. The petitioners' bill for their services was not approved by the company until January 14, 1941, and no part of the fees was paid until August 1941. It is apparent, we think, that the fees were not so subject to the petitioners' use and disposition during 1940 as to bring the instant case within the rule of the Jacobus case, supra. The petitioners also rely on John A. Brander, 3 B.T.A. 231, and John I. Chipley, 25 B.T.A. 1103. Those cases may also be distinguished on their facts. In the Brander case, the corporation's earnings during the year in question, after deducting all salaries and expenses, were sufficient to have paid *184 a dividend of 350 per cent on the outstanding capital stock, and 150 per cent on the combined capital and surplus as of the close of the preceding year; and in the Chipley case, the corporation had a net income during the year in question far in excess of the amounts of salary accrued but unpaid. Since the $41,569.91 was not available for the petitioners' use and enjoyment during 1940, the petitioners have failed to meet the test enunciated in the Regulations and in the Parris and Jacobs cases, supra. We conclude, therefore, that the petitioners did not constructively receive the amounts in question in 1940, and that the respondent was correct in his determination that these amounts were properly includible in the petitioners' taxable income for 1941. Decisions will be entered under Rule 50.