C. O. Struse & Sons v. Commissioner.
C. O. Struse & Sons v. Commissioner
Docket No. 8208.
United States Tax Court
1946 Tax Ct. Memo LEXIS 78; 5 T.C.M. (CCH) 809; T.C.M. (RIA) 46225; September 20, 1946
William R. Spofford, Esq., 1035 Land Title Bldg., Philadelphia, Pa., W. Charles Butscher, Esq., Packard Bldg., Philadelphia, Pa., Charles S. Jacobs, Esq., and Sherwin T. McDowell, Esq., for the petitioner. William D. Harris, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner challenges respondent's determination of deficiency in income, declared value excess-profits, and excess-profits taxes for the calendar year 1941, and excess-profits tax penalty, as follows: Income tax
$19,369.71
Declared value excess-profits tax
8,977.93
Excess-profits tax
14,199.27
Excess-profits tax penalty
3,549.82
The issues to be decided are: (1) Whether salaries accrued on petitioner's books in 1941 to the credit of its three officers are not deductible by reason of section 24 (c) of the Internal Revenue Code; (2) whether the compensation paid to two of its officers is reasonable; and (3) if issue (1) is decided adversely to petitioner, *80 its liability for penalty on account of delinquency in filing its excess-profits tax return. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, a Pennsylvania corporation, has engaged in the business of masonry subcontracting and retail selling of coal, oil, building materials, and allied lines. Its income tax return for 1941 was filed with the collector of internal revenue for the first collection district of Pennsylvania at Philadelphia. On August 17, 1945, it filed in the same collection district its excess-profits tax return. Petitioner's books of account have been kept on the accrual basis, with construction work on a percentage of completion basis, and its Federal tax returns were prepared in conformity therewith. At all times material to this proceeding petitioner's capital stock, consisting of 1,500 shares, was owned by three brothers who were its officers: Shares
L. M. Struse, President
502 1/2
R. W. Struse, Secretary and Treasurer
502 1/2
C. O. Struse, Jr., Vice President
495
In its 1941 tax returns petitioner claimed as a deduction the sum of $87,500, being the amount *81 charged on its books of account for salary earned, accrued, and owing to its officers as follows: L. M. Struse
$35,000.00
R. W. Struse
45,000.00
C. O. Struse, Jr.
7,500.00
Salaries in these amounts were authorized by action of the board of directors on April 22, 1941, and were accrued as credits to their respective accounts during the year 1941. Petitioner's three officers reported in their 1941 tax returns, which were prepared on the cash receipts and disbursements basis, the full amounts of the salaries accrued and credited to their respective accounts, and paid income taxes thereon. Petitioner made cash payments to its officers aggregating $82,211.96 during the calendar year 1941, and $13,480.48 during the period January 1, 1942 - March 15, 1942, all of which were charged to the officers' respective accounts on petitioner's books as follows: First 2 1/2
Months
1941
of 1942
L. M. Struse
$33,264.43
$ 4,946.02
R. W. Struse
39,684.59
5,244.20
C. O. Struse, Jr.
9,262.94
3,290.26
$82,211.96
$13,480.48
There were credit balances on petitioner's books on January 1, 1941, in favor of its officers, aggregating $88,512.60, *82 and on December 31, 1941, $93,800.64, as follows: Jan. 1, 1941
Dec. 31, 1941
L. M. Struse
$32,111.00
$33,846.57
R. W. Struse
38,381.27
43,696.68
C. O. Struse, Jr.
18,020.33
16,257.39
$88,512.60
$93,800.64
As of both December 31, 1940, and December 31, 1941, petitioner's current assets were substantially in excess of its current liabilities, which liabilities included the credit balances in favor of its officers. As of December 31, 1941, petitioner owed notes payable to banks in the amount of $70,000, which were paid off between January 12 and March 3, 1942. No additional money was borrowed until May 12, 1942. Petitioner's cash balance in banks, exclusive of petty cash, during the period November, 1941 - March, 1942, fluctuated between approximately $180,000 and $120,000. During the seven-year period 1936-1942, petitioner earned cash discounts of approximately $110,000, and paid interest of approximately $15,000. During 1941 it earned cash discounts in the amount of $17,444.59, and paid interest of $840. Throughout the calendar year 1941 and for some time prior thereto, and until the execution of a written agreement on April 13, 1942, petitioner *83 and its officers had an oral agreement with The Philadelphia National Bank that petitioner would not, so long as it owed anything to the bank, pay to its officers any unpaid balances due them at the time the loan was made but that it could pay them any amounts accruing for current salaries. By resolution of February 3, 1942, L. M. Struse was instructed to negotiate with the bank to borrow up to $350,000, and the officers agreed that they would subordinate the balance due each of them as of December 31, 1941, to the bank's indebtedness. On April 13, 1942, the officers wrote the bank that they would not accept payments on the balances due them until all present and future indebtedness of petitioner to the bank should have been paid in full or unless the bank gave its written consent. Pursuant to the resolution, entries were made on petitioner's books to reflect the subordination of the moneys due its three officers. On January 31, 1943, entries were made on petitioner's books to reflect release of the subordination by the bank. Petitioner's total volume of business in 1941 was $1,590,355.99, which exceeded the volume for any year from 1936. Petitioner's net income, prior to deduction *84 for salaries, was less in 1941 than it had been since 1938. From 1939 to 1941, the salaries paid petitioner's officers were the same. Prior to 1941, respondent raised no question with respect to amounts claimed by petitioner as deductions for officers' salaries. For the taxable year 1941 respondent questioned the reasonableness of the salaries paid to L. M. Struse and R. W. Struse. L. M. Struse and R. W. Struse devoted their entire time to petitioner's business. The former, who had been petitioner's president for 20 years, was charged with the duties of financing the business, supervising books and accounts, arranging bank loans, and managing its retail business. R. W. Struse, petitioner's secretary for 24 years and treasurer for 18 years, was in charge of the subcontracting work, directly supervising the activities required in estimating quantities, fixing prices and composing final bids based thereon. Through his efforts, petitioner was able to overcome difficulties of obtaining labor and materials during the period when these were scarce. Projects on which petitioner bid and worked extended throughout the eastern part of the United States. Petitioner has enjoyed an excellent *85 reputation in the building industry, both as to quality of work and financial ability. It is one of the largest masonry subcontractors in the Philadelphia area, and is the only one that has bid on work outside of that area. Salaries of petitioner's officers were discussed at directors' meetings, and amounts were based upon a determination of what each officer contributed to the business to make it successful and profitable. Respondent, in his notice of deficiency, determined: Reasonable allowances for compensation of officers for personal services actually rendered during the year 1941 are as follows: L. M. Struse
$23,000.00
A. W. Struse
25,000.00
C. O. Struse, Jr.
7,500.00
Total
$55,500.00
Of the total amount of $87,500.00 deducted on your return, alleged to represent compensation of officers, there has been disallowed $85,043.25 for the reason that no part of this amount was paid during the taxable year 1941 or within two and one-half months after the close thereof. The amounts of $45,000 and $35,000 paid by petitioner to R. W. Struse and L. M. Struse, respectively, as salaries for 1941 were reasonable. Opinion It may be that while a charge of *86 constructive receipt is available to the Treasury, the corresponding claim of the constructive payment is not necessarily open to a taxpayer. See The Sanford Corporation, 38 B.T.A. 139, affirmed (C.C.A., 3rd Cir.), 106 Fed. (2d) 882, certiorari denied, 309 U.S. 659. In construing section 24(c)(2), however, the reciprocal taxability of employer and employee, of debtor and creditor, is so apparent [1] that, whether it be called constructive payment or not, the obligation of the recipient to report the income, especially if accompanied by conduct manifesting his acceptance of that obligation, constitutes compliance with the condition of that subsection that "the amount thereof is * * * includible in the gross income of such person * * *." In that event, an employer in the position of the present petitioner is entitled to the deduction. Michael Flynn Manufacturing Co., 3 T.C. 932; Ohio Battery & Ignition Co., 5 T.C. 283. Unlike the situation in Anthony P. Miller, Inc., 7 T.C. 729 (Sept. 17, 1946), the salaries in question here were unreservedly credited to the accounts of the respective officers and could have *87 been drawn upon by them at will. Considering the formal action of the Board of Directors approving the salaries, the ample financial ability of petitioner to pay them, and the extent of the control by these officers to which petitioner was subject, this emerges as a clear case of constructive receipt by the officers, John A. Brander, 3 B.T.A. 231, and hence of deductibility by petitioner. Michael Flynn Manufacturing Co., supra.
*88 In addition to the applicability of that subsection, however, there exists here the further factor of actual payment in cash [2] within the express terms of section 24(c)(1). Respondent's resistance to that conclusion is a twofold contention made at the hearing, which all but defeats itself. He says first that petitioner's prior indebtedness to its officers requires that the payments to them be considered to discharge preexisting debts rather than current salary; and second, that petitioner's agreement with the bank prevented these payments from being made, either actually or constructively. The difficulty is that petitioner was expressly permitted to pay "current salaries," so that even disregarding the actual conduct of the transaction, and even if, ordinarily, judicial interpretation might treat these payments as applying first to the oldest obligation, petitioner's agreement to withhold payment of the latter requires that it be construed as paying the only amounts it was permitted to pay, the current salaries for which it claims deductions. There is also raised a question of the reasonableness *89 of two of the salaries awarded. But none of the familiar signals warning of efforts to distribute corporate earnings in the guise of compensation for services emerge from the present record. See, e.g., Twin City Tile & Marble Co., 6 B.T.A. 1238, affirmed (C.C.A., 8th Cir.), 32 Fed. (2d) 229; C. S. Ferry & Son, Inc., 18 B.T.A. 1261. The payments did not correspond to the stockholdings of the respective officers. The salaries were voted at a time when no perceptible increase in corporate earnings had occurred. And, most significant of all, the amounts in controversy were not increased but were identical with those of at least two preceding years, and the total was not unreasonably disproportionate to other years included over a long, if not entirely consistent, history. Considering the duties and responsibilities of the officers and the nature and success of petitioner's business, no holding that the salaries in question were unreasonable seems warranted. We view respondent's determination as in error. Decision will be entered for the petitioner. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b). See H. Rept. 1546 (75th Cong., 1st Sess.), p. 29.↩
2. Except for $71.21 by which the payment to petitioner's Secretary fell short.↩