Leon W. Perry and Lucille F. Perry v. Commissioner.
Perry v. Commissioner
Docket No. 69717.
United States Tax Court
T.C. Memo 1960-101; 1960 Tax Ct. Memo LEXIS 189; 19 T.C.M. (CCH) 540; T.C.M. (RIA) 60101; May 24, 1960
*189 Held, that petitioners were on the cash receipts and disbursements method of accounting; and accordingly, that their state income taxes were deductible only in the year when paid. J. Elton Mitchiner, Esq., First Citizens Bank Building, Raleigh, N.C., for the petitioners. John L. Ridenour, III, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined deficiencies in petitioners' income tax, and additions to tax for substantial underestimate of estimated tax (section 294(d)(2) of the 1939 Code) and for underpayment of estimated tax (section 6654 of the 1954 Code), as follows: Additions to Tax
Sec. 294
Year
Deficiency
(d)(2)
Sec. 6654
1954
$6,821.80
$5,751.01
1955
394.67
$1,993.65
No appeal has been taken with respect to the year 1955. The sole issue for decision is whether the petitioners may deduct, as an itemized nonbusiness deduction on their 1954 return, the amount of their liability for state income taxes for said year, which they did not pay until the succeeding year 1955. The 1954 addition to tax under section 294(d)(2) is in issue only to the extent that the amount thereof may be affected by a redetermination of the deficiency for said year. Findings of Fact Some of the facts were stipulated. The stipulation of *191 facts, together with the exhibits annexed thereto, is incorporated herein by reference. Petitioners Leon W. Perry and Lucille F. Perry are husband and wife, residing in Henderson, North Carolina. For the calendar year 1954, they filed a joint Federal income tax return with the district director of internal revenue at Greensboro, North Carolina. For several years prior to 1951, petitioner Leon Perry (hereinafter referred to as the petitioner) was engaged as a sole proprietor in the manufacture and sale of lumber products in Henderson, trading under the name of Perry Lumber Company. The books of the proprietorship were kept, and the income from its operations was computed, according to an accrual method of accounting. In the latter part of 1950 or early in the year 1951, petitioner personally acquired in his individual capacity certain timber leases and/or contracts for cutting timber in the State of New Mexico. He thereupon caused to be organized two corporations, each of which bore the name of Perry Lumber Company, Inc. One of these corporations was incorporated under the laws of North Carolina (hereinafter called the North Carolina corporation) and the other was incorporated *192 under the laws of Colorado (hereinafter called the Colorado corporation). Immediately after formation of the North Carolina corporation, petitioner transferred all of the assets of his proprietorship to said corporation, in exchange for its capital stock. Petitioner and his wife thereupon moved to Colorado, where he supervised timber and lumber mill operations in New Mexico and Colorado. Petitioner's brother was left in charge of the North Carolina corporation. In the latter part of the year 1950, petitioner employed an attorney who also had training as an accountant, as a business and tax adviser. He prepared the Federal income tax returns for petitioner and his wife for the years 1951, 1952, and 1953. In connection with the preparation of the 1951 return, this adviser suggested to the petitioner that he and his wife accrue and deduct on their 1951 return their liability for 1951 state income taxes. The petitioners acceded to this suggestion, and on petitioners' 1951 return, a nonbusiness deduction from adjusted gross income was taken for 1951 state income taxes. Petitioners likewise claimed nonbusiness deductions from adjusted gross income for 1952 and 1953 state income taxes on *193 their respective returns for those years. Petitioners actually paid their 1951, 1952, and 1953 state income taxes during the years 1952, 1953, and 1954, respectively. Analysis of petitioners' 1954 return For the taxable year 1954, petitioners' return was prepared by another individual, an accountant employed to handle petitioner's tax affairs. On said return, the petitioners reported the following: Income Items: Salaries
$ 6,200.00
Interest
300.00
Rentals (Leon Perry)
5,094.77
Commissions
10,000.00
Installment gain
225.66
Sec. 631(a) taxable gain: Long-term
$159,528.24
Short-term
28,197.30
187,725.54
Rentals (Lucille Perry)
1,295.64
Total
$210,841.61
These various income items may be summarily described as follows. 1. Salaries. This item represents $3,600 which was paid to the petitioner in 1954 by the North Carolina corporation, and $2,600 paid to his wife by the Colorado corporation. The only records used by the petitioners in computing this item for inclusion in their return were the Forms W-2 (withholding tax statements) given to the petitioners by each of the employer corporations. The petitioners maintained no books *194 of account that showed income earned but not received as of the end of said taxable year. All salary income was computed and reported by the petitioners on the cash basis of accounting. 2. Interest. Petitioner was paid interest in 1954 in the amount of $300. This interest was received as part of monthly mortgage payments the petitioner received from the sale of certain beach property. Said interest consisted entirely of cash amounts paid in 1954, and does not reflect any accrued interest earned but not received as of the end of said year. All income in this category was computed and reported on the cash basis of accounting. 3. Rentals. These items of $5,094.77 and $1,295.64 for petitioner and his wife, respectively, reflect the net amounts of rental income remitted to each in 1954 by the rental agency that managed their rental properties. The agency maintained records of rents collected and of expenditures made; and it paid the net balances to petitioners. Petitioners, who maintained no books of their own, computed their respective rental incomes by using the information supplied to them by the rental agency from its records. Petitioner's accountant who prepared the 1954 return *195 made no attempt to ascertain whether there were any accrued items of rental income or expenses as of December 31, 1954. All income of this character was likewise computed and reported on the cash basis of accounting. 4. Commissions. Petitioner was paid $10,000 in commissions in 1954 by the North Carolina corporation, for work performed in said year in securing timber for that corporation. Petitioner maintained no books or records reflecting said income. All income from this source was computed and reported on the cash basis of accounting. 5. Installment gain. This item is the income received by the petitioner in 1954, from the sale of the above-mentioned beach property in 1949, which he had elected to report on the installment sales method. A schedule attached to the petitioners' return for 1954 reflects the payment received in said year; and it establishes that the petitioner regularly computed and reported said gain on the cash receipts and disbursements method. 6. Section 631(a) (I.R.C. 1954) taxable gain. This item of $187,725.54 reflecting both long and short term capital gain was recognizable taxable income to the petitioner in 1954 by reason of *196 his election under section 631(a) of the 1954 Code [1] to treat the cutting of timber on the tracts on which he had leasehold and contract rights, as the sale or exchange of such timber in 1954. The gain recognizable to the petitioner on timber cut ($187,725.54) was computed by reference to the difference between the basis of the timber property ($220,014.88) and the fair market value of the cut timber ($567,268.66). The fair market value of the cut timber then became the basis for computing any gain or loss on petitioner's ultimate sale thereof. Petitioner in 1954 thereafter sold this cut timber to the Colorado corporation, at a price equal to his new basis of $567,268.66; he accordingly realized no gain or loss therefrom; and he did not report the sales in his return for 1954. Records of these sales were reflected on the books of said Colorado corporation, in an account entitled "Leon W. Perry timber account." Said account discloses that in the taxable year 1954, the Colorado corporation did not pay to the petitioner the entire amount due him as a result of such sales; but the petitioner did not report any of such unpaid amounts as accrued income on his return. *197 Deduction Items. The nonbusiness deductions claimed by petitioner and his wife on their 1954 joint return were the following: Contributions
$ 600.00
Interest
67.52
Sales tax and automobile licenses
85.00
State income taxes: North Carolina
1,040.63
Colorado
21.90
New Mexico
12,073.76
These various deduction items may be summarily described as follows. 1. Contributions, interest, sales tax, and automobile licenses. Expenditures for the aforesaid items, claimed as deductions in the joint return for the taxable year 1954 were paid in cash during said year and were reported in accordance with the cash method of accounting. The petitioners likewise claimed such deductions on the cash basis, in their 1951 joint return which is the only other return in evidence for years prior to 1954. 2. State income taxes. The above-mentioned state income taxes for the taxable year 1954 were claimed as deductions from adjusted gross income in 1954 as an accrued expense, rather than as deductions for the year 1955, when such taxes were paid. These were the only deductions claimed on an accrual basis in the 1954 return. Neither the petitioner nor his wife kept any *198 personal books or records other than bank statements and cancelled checks. The books of the Colorado corporation were kept in accordance with an accrual method of accounting; and the corporation reported its income on such basis. The books of said corporation for the calendar year 1954 contain an account entitled "Leon W. Perry, Personal Account." Said account reflects the payment of certain personal expense items on behalf of the petitioner, by means of checks drawn on the corporation. However, the account does not reflect the payment of all of petitioner's personal expense items during the taxable year here involved; nor does it reflect any income from personal transactions. Petitioners have never made formal application to the Commissioner of Internal Revenue for permission to change their method of accounting on their individual income tax returns. The respondent, in his notice of deficiency, disallowed the deduction which petitioners claimed on their 1954 return for 1954 state income taxes paid in 1955. However, he determined that petitioners were entitled to a deduction on said 1954 return for 1953 state income taxes which they paid in 1954. Opinion The question for *199 decision here is the year in which the petitioners may properly deduct their 1954 state income taxes. Petitioners deducted such 1954 taxes in their joint return for the taxable year 1954, notwithstanding that said taxes were not paid until the following year 1955. The Commissioner determined that the petitioners were on the cash receipts and disbursements method of accounting; and therefore he determined that deduction of such nonbusiness expenses should not be deducted in 1954, but rather should be deducted in 1955, the year when they were paid. The relevant statutory provision is section 446 of the 1954 Code. This section provides, so far as here material, as follows: "SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. "(a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. "(b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. *200 "(c) Permissible Methods. - Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting - "(1) the cash receipts and disbursements method; "(2) an accrual method; "(3) any other method permitted by this chapter; or "(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate. * * *
"(e) Requirement Respecting Change of Accounting Method. - Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate. The meaning of section 446, and of its predecessor section 41 of the 1939 Code, is well established. Taxable income is to be computed under the method of accounting regularly employed by the taxpayer in keeping his books. He may select any method of accounting which best suits his needs, provided it conforms to generally accepted accounting principles in his trade or business, and clearly reflects income. *201 If for any reason a taxpayer wishes to change the method of accounting regularly employed in keeping his books and in computing his income, or to make a change in his accounting treatment for a material item, he must first secure the consent of the Commissioner. The Commissioner on his part will not impose a method of computing income upon the taxpayer, unless no system of accounting has been regularly employed, or unless his system of accounting does not clearly reflect income. It may generally be concluded that where a taxpayer has no books and records, he is on the cash receipts and disbursements method of accounting. John A. Brander, 3 B.T.A. 231; Wilson Marks, 6 B.T.A. 729. An accrual method may not be used under such circumstances, because, being based on the principles that income is earned when the right thereto becomes fixed and that expenses are deductible when the liability therefor becomes certain, it is essential that a set of books and records be maintained - showing the party's financial rights and obligations, and not merely his cash receipts and disbursements. The following statement in John A. Brander, supra, at page 235, is *202 apropos here: "an accrual method without accounting records is an anomaly. Such a method is inherently an accounting system whereby one is enabled not merely to record receipts and payments after they take place but to keep track of his financial rights and obligations under a credit system. Even a simple practice of accruals would require systematic accounting and some sort of bookkeeping. Without records it may generally be concluded that the cash method is being used. * * *" In the instant case, neither the petitioner nor his wife maintained any books or records that showed their right to income and their liability for expenses, as distinguished from amounts actually received and disbursed. The only personal records which they kept were cancelled checks and bank statements, the Form W-2 withholding statements respecting their salaries, and the statements issued by the rental agency which they employed. All of these records reflected cash receipts and disbursements. The fact that the Colorado corporation maintained an account showing its liability to petitioner for unpaid amounts resulting from petitioner's sales of cut timber to such corporation is of no help to the petitioner. *203 That account was not an account of the petitioner; and the latter maintained no record of his own, which showed that such amounts were due him, and also did not report any such amounts as accrued income. It is true also that the books of the Colorado corporation contained an account entitled "Leon W. Perry, Personal Account," which reflected the payment of certain personal expenses on behalf of the petitioner. But here again, this account was not maintained by the petitioner; and there is no showing that any accruals were recorded therein. Moreover, the parties have stipulated that this account did not reflect all of petitioner's personal expenses for the year involved, and that it did not reflect any income items. Thus the account was incomplete. Nor is petitioner helped by the fact that several years prior to the year here involved he operated a lumber manufacturing proprietorship, which maintained inventories and computed its income on an accrual basis. The fact that one of the sources of income derived by a cash basis taxpayer is a business which is on the accrual basis, is not sufficient to put the taxpayer himself on an accrual basis, with respect to all his other income and *204 all his expenses. Berryman D. Fincannon, 2 T.C. 216, 219. Moreover, the petitioner has not at any time reported any of his income and expenses on an accrual basis, except for the state income taxes here involved. While petitioner did report $187,725.54 of capital gain on the cutting of his timber, we think that this amount did not represent a true accrual of income. Petitioner's cutting of the timber was, under section 631(a), to be considered as a sale or exchange. Actually, of course, it was not. Petitioner neither received, nor acquired the right to receive, any money or other thing of value, as consideration for the sale of his timber. The gain which he recognized and reported was measured by the spread between fair market value (not consideration received) and his adjusted basis. Finally, petitioners contend that no formal application for permission to change to the accrual method of accounting for state income taxes was required, because for the two years immediately prior to the year here in question, an agent of respondent had examined their returns, and did not question their treatment of unpaid income taxes on such returns. They argue that this was tantamount *205 to putting the Commissioner on notice that they were employing an accrual method for deducting state income taxes. We do not agree. Merely because the respondent did not make adjustments for preceding years (even if it be assumed that respondent's agents were aware of the manner in which petitioners were handling the deduction of their state income taxes), does not estop respondent from making such adjustments for the particular year involved, as may be necessary to clearly reflect the income. Charles D. Mifflin, 24 T.C. 973. We approve the respondent's determination as to the issue here considered. Decision will be entered under Rule 50. Footnotes
1. Section 631(a) of the 1954 Code provides, so far as here material, as follows: (a) Election to Consider Cutting as Sale or Exchange. - If the taxpayer so elects * * *, the cutting of timber * * * shall be considered as a sale or exchange of such timber cut during such [taxable] year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value * * * shall thereafter be considered as the cost of such cut timber to the taxpayer * * *.↩