KENNETH DRUMMOND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100767. Promulgated February 7, 1941.

*James C. Thompson*, *C. P. A.*, for the petitioner.
*B. L. Bird*, *Esq.*, for the respondent.

OPINION.

KERN: Until 1934 petitioner was compensated for his services by his employer by the payment of commissions. In that year, for the

reasons set out in our findings, the contract between petitioner and his employer relating to petitioner's compensation was modified in that his compensation was to consist of minimum monthly payments of $625, with provisos that if he earned commissions in excess of that sum but under $1,000 per month such commissions should be paid to him in full, but if he earned commissions in excess of $1,000 he should be entitled to such excess only to the extent that the accumulated excess itself exceeded the amount by which the minimum payments were in excess of commissions payable pursuant to his contract of employment prior to its modification. In other words, petitioner by virtue of the modified contract relinquished his unconditioned right to the payment in full of commissions in excess of $1,000 per month in order to obtain a minimum payment of $625 per month, regardless of whether his commissions due under the unmodified contract equaled this sum. It therefore follows that petitioner was entitled to receive during the taxable year only the sum of the commissions which would have been earned by him according to the original contract of employment, decreased by the amount thereof which his employer was entitled to retain by virtue of the modifications of the contract made by the parties in 1934.

We make this interpretation of the contract between petitioner and Bullock, as modified in 1934, not without difficulty, because it was an oral contract and the testimony of petitioner with regard to it was not as clear as might be wished, and because it is not consistent with the interpretation placed upon it by petitioner's employer as reflected on the latter's books. There the minimum payments were treated, as respondent insists they should be treated, as advances to be repaid to Bullock out of any commissions earned by petitioner in excess of $1,000 per month. It is respondent's contention that such excess during the taxable year in the amount of $8,319.10, retained by the employer on account of advances made in prior years, was constructively received by petitioner and should be included in his income during the taxable year.

Even if we should interpret the contract as respondent contends we should, our ultimate result must be the same. There was no unconditional personal obligation on the part of petitioner to repay any "advances", assuming that any part of the minimum monthly payments were in the nature of advances. Not only was the repayment of such advances not a personal obligation of petitioner, but it was also doubly contingent; contingent upon his remaining in the employ of Bullock and upon his commissions calculated under the original contract being in excess of $1,000 per month. Only from such excess would the "advances" ever be repayable. In this re-

spect the instant proceeding differs decisively from the situation covered by I. T. 2043, C. B. III-2, p. 94, cited by respondent. Here the "advances" were made to petitioner in payment for his services, with a right reserved to the employer to make certain adjustments upon certain contingencies in the payment of his compensation in the future. The petitioner received them as a matter of right, with no restrictions as to their use and with any condition as to future adjustments thereof being only contingent. Regardless of the happening of the contingencies, petitioner will always be entitled to retain the "advances" paid to him. Under these circumstances petitioner, being on the cash receipts basis, correctly reported these "advances" as income for the years in which received. Cf. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, 424. To hold otherwise would be to offer encouragement to schemes whereby large sums could be paid as remuneration to taxpayers by way of "advancements", with remote contingencies as to future adjustments attached thereto, which would unduly postpone the collection of taxes as well as result in an ultimate distortion of income.

Since petitioner properly reported these minimum monthly payments as income in the years when they were received, it follows that he is not properly taxable in a later year on sums withheld from him by his employer which would otherwise have been payable to him. In 1937 Drummond had no control over the $8,319.10 credited to him but held back by the employer.

We conclude that petitioner is not taxable in 1937 on the $8,319.10 withheld by his employer.

Another question is presented by the $459.53 credited to Drummond on his employer's books as of December 31, 1937. Here is a case where petitioner has earned certain commissions but will not get them until a later year.

Under our interpretation of the agreement, commissions were only to be withheld when there was an existing credit balance in favor of the employer. Once petitioner had erased this balance, the agreement no longer sanctioned the withholding of commissions. The fact that petitioner actually received over $15,000 in the taxable year, $3,000 in excess of the $12,000 which would have been the maximum amount payable under a contrary interpretation of the agreement, adds factual support to our conclusion. Notwithstanding, the petitioner asserts that the $459.53 was withheld and credited to him pursuant to the agreement which Drummond claims required all excesses over $1,000 to be withheld and, in this case, set aside for future use in case his future earned commissions did not amount to $625 per month. It is not easy to paraphrase this agree-

ment, since it was oral and the only evidence thereof in this proceeding was that elicited from petitioner himself by way of oral testimony. The following testimony of Drummond is the basis of our conclusion:

A.   *   *   *   Above the thousand went back in the account.

Q. But, you received more than $1,000.00 a month in 1937?

A. That is right, therefore what was in excess of $1,000.00 went back in the account.

Q. But, it didn't—you actually got and kept?

A. That is right. As I say, above $1,000.00 went back.

And at a further stage of the examination Drummond stated: "A. *   *   * and over $1000.00 was to go back, for any so-called differences *   *   *."

On redirect examination petitioner's counsel propounded the following questions:

Q. Mr. Drummond, in 1937, when you received $15,678.87 from your employer, you have also made the statement that any income in excess of $1000.00 was returned back or withheld by your employer to apply to any debit balances which might be existing in your account. Now, due to the fact that there is a difference there between $15,678.87 and $12,000.00, wasn't that due to the fact that in that year, towards the end of 1937, that you had started to show a credit balance in that account and they began to pay you out in cash each month?

A. That is right.

Q. In excess of $1000.00, to account for that difference?

A. That is correct.

The witness's last answer appears to contradict his former answers, but, since it is on redirect examination, it is apparently his final decision on the matter.

Since the agreement did not prevent petitioner from taking this $459.53 he earned in 1937, there is no apparent reason for not concluding that Drummond had full power and control over the money and merely elected to allow it to remain to his credit on the employer's books. This, of course, is the basis of the Commissioner's determination. Petitioner has not introduced any conclusive proof in rebuttal. There is no showing that petitioner ever made demand upon Bullock for the money. Upon the facts it appears that petitioner had a right to the $459.53 in the taxable year and at any time he chose could have made demand upon and received from the employer this money. Upon these facts we have no alternative but to hold petitioner taxable on the $459.53 on the theory of constructive receipt set forth in *John A. Brander*, 3 B. T. A. 231, and followed by this Board in *John I. Chipley*, 25 B. T. A. 1103.

*Decision will be entered under Rule 50.*