C. E. Shockey v. Commissioner.
Shockey v. Commissioner
Docket No. 9522.
United States Tax Court
1947 Tax Ct. Memo LEXIS 75; 6 T.C.M. (CCH) 1092; T.C.M. (RIA) 47274; October 6, 1947
*75 Income: Constructive receipt. - Held, that petitioner who reported on the cash basis constructively received taxable income for 1941 to the extent that certain credits made to his commission account on the books of his employer paid off his indebtedness to the company because of prior advances. Held, further, that the balance of such credits was not constructively received, because not available to petitioner in that year. Held, further, that where the supply and repair inventory at petitioner's agency was not owned by him, but by the company he represented, the increase therein at the close of the taxable year was not taxable income to petitioner. Albert F. Hillix, Esq., and John E. Park, Esq., for the petitioner. Richard A. Jennings, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: This proceeding involves an income tax deficiency of $3,602.24 determined by respondent against the petitioner for the calendar year 1941. It is alleged in the petition that respondent erred in increasing petitioner's business income for the calendar year 1941 by the net amount of $10,758.71, resulting from his erroneous determination *76 (1) that petitioner constructively received income in the amount of $14,750.83 in the form of commissions credited to petitioner's account on his employer's books during that year and (2) that petitioner had a net taxable income in any amount greater than that reported on his return for 1941. The proceeding was submitted upon a stipulation of facts, exhibits attached thereto, and oral testimony. The stipulation is included herein by reference as part of our findings of fact. Findings of Fact Petitioner is an individual residing in Kansas City, Missouri, with offices at 1526 Grand Avenue in that city. His income tax return for the calendar year 1941 was filed with the collector of internal revenue for the sixth district of Missouri. For the years 1938 to 1942, inclusive, petitioner's income tax returns were made on the cash receipts basis. Petitioner has been associated with the National Cash Register Company, hereinafter referred to as the Company, since 1923, first as a salesman, and later as a sales agent, in which latter capacity he managed an agency. From January 1, 1939 and continuously for several years thereafter, including the calendar year 1941, petitioner was employed *77 by that Company, under a written contract dated January 1, 1939, as "Sales Agent" for the Kansas City, Missouri territory, embracing that city and 14 surrounding counties in Kansas and Missouri, for the sale and the servicing of the Company's cash registers, accounting machines, and other products and accessories called National Products. Petitioner's written contract of employment provides for his compensation on a commission basis only, at specified percentages on various classes of National Products sold in his territory and further provides, inter alia, that his commissions "shall not be credited to his account" on the Company's books until the purchaser has made settlement in full by cash or notes; that "his account shall be charged" with previously paid or credited commissions on any uncollected purchase price; that orders taken by the agent shall not be binding until accepted by the Company; that the agent shall remit to the Company daily all funds collected or received by him for the Company; that the agent "shall pay his own expenses", including traveling, office, or other expenses, and certain legal expenses, taxes, and insurance; that the Company shall not be liable for *78 any indebtedness of the agent to salesmen employed by him with the Company's approval; that the agent shall upon demand, account for and deliver to the Company all National Products and other equipment "charged to his consignment account" and upon failure to do so the same may be "charged to his account at list price"; that "this contract covers all agreements between said sales agent and the Company" and "shall not be varied or added to in any manner except in writing"; and, further, paragraph 19 of that contract provided, in part, as follows: "Said Company shall retain from the commissions now due or that hereinafter shall become due said sales agent, an actual credit of * * * [$4,200 for the year 1941] to be held as a deposit and security for good faith on said sales agent's part, and to protect said Company against loss by reason of amounts charged back against said sales agent's account. * * * Should said Company advance or loan to said agent from time to time any sum or sums of money, said agent agrees that any such sum or sums shall be charged to his account, and that all or any part of the commissions that may become finally due and payable to said agent may be applied *79 by said Company toward payment of said agent's account, and if, upon a final account stated, said account should disclose a balance due the Company, said sales agent agrees to pay the same immediately. "Further, in order to insure the repayment to said Company of any moneys owing to it by reason of this or any other paragraph of this agreement, said sales agent hereby gives the Company a first and prior lien on his operating bank accounts and the receivables of his business, and upon demand of the Company, or its representatives, at any time during the continuance of this agreement, and without demand on its termination, said bank balance and receivables are hereby assigned to, and shall be turned over to said Company and becomes its sole property, with the right to withdraw, collect, and enforce payment of the same. The proceeds thus realized shall be applied (1) towards the liquidation of said sales agent's account with said Company, (2) the payment of said sales agent's business obligations, (3) the balance, if any, to be paid to said sales agent or his order, as hereinafter provided." The Company maintained accounts which through appropriate debits and credits reflected every *80 item of the day to day transactions of petitioner's agency. The petitioner's office furniture and fixtures, which were owned by the Company were charged to him to be accounted for by him subject to normal depreciation. The petitioner's inventory of repair parts, service supplies and sundries was owned by the Company, but the items therein were charged to his account when sent to him, while all his sales of parts, service or repairs were credited to his account. All items of the petitioner's expenses, including commissions to salesmen employed by his agency, were reported to the Company each week through signed vouchers upon the audit of which the Company issued its checks for payment of such expenses which were charged to the agent's account. All collections of money made by petitioner were regularly reported to the Company and deposited in a special bank account on which only the Company could make withdrawals. All sales of National Products made through petitioner's agency were reported to the Company and as his commissions thereon became due they were credited to his commission account. For many years it has been the practice and policy of the Company that whenever the amount *81 of commissions credited to a sales agent's commission account did not equal his specified drawing account of $100 per week, the Company would nevertheless pay to its sales agent, over and above his agency expenses, the amount of $100 per week and would charge such item on the Company's books as a debit against unearned commissions. Before the sales agent could draw any amount of cash, for his personal use, in excess of his specified drawing account of $100 per week, it was necessary that his commissions on sales made and paid for by the purchasers, exceed the previous advances debited to his account. Further, after establishing a credit balance, the agent's request to the Company for permission to withdraw any part thereof had to be approved by his division manager who had knowledge of the general business conditions in the agent's territory. From 1939 to and including the calendar year 1941 the petitioner's specified drawing account was $100 per week and the Company regularly sent him a weekly check in that amount which was debited to his commission account against unearned commissions. On January 1, 1941, the cash withdrawn and actually received by petitioner prior to that date *82 exceeded the credits to his commission account as of that date, leaving him a debit balance on that date of $8,916.08. That sum had been reported on petitioner's prior year's tax returns, which were made on the basis of cash actually received by him from the Company and not on the basis of commissions accrued to his account on the Company's books. On his returns, petitioner reported tax liabilities of $9.22 for 1939; $48.66 for 1940; and $1,202.56 for 1941. During the calendar year 1941 petitioner's commission account on the Company's books changed from a net debit balance of $8,916.08 at the beginning of the year to a net credit balance of $1,634.75 at the close of the year. A credit of $14,750.83 to his commission account as of the close of the year 1941 offset the above-mentioned debit balance and as to the remaining $5,834.75 of such credit the amount of $4,200 was withheld by the Company as a "deposit", pursuant to petitioner's sales agent contract, and, as stipulated by the parties herein, such $4,200 was not available to him in 1941 leaving, in effect, a net credit balance of $1,634.75 so accrued on the Company's books to petitioner's commission account. The latter amount *83 was not available to petitioner in 1941, and was not reported on his 1941 return, but was included on his 1942 tax return made on the cash basis. The Company sent each of its sales agents, including petitioner, weekly statements as to the status of his account and also an annual statement in January following the close of the year which disclosed, inter alia, the amount of the agent's commissions as shown on the Company's books for the year and the amount which the Company reported to the Federal Government for income tax purposes insofar as payments to the agent were concerned. Those annual statements contained a postscript to the effect that the Commissioner of Internal Revenue had ruled that any increase in the sales agent's commission account constituted "Constructive Receipt" income to the agent. The Company's annual statement to petitioner for 1941 showed an increase of $14,750.83 in petitioner's commission account for that year, as mentioned in the next preceding paragraph. It is stipulated that on petitioner's return for the calendar year 1941 he included in taxable income only the amount actually withdrawn from his commission account with the Company during that year, *84 and, further, that the net increase in petitioner's income as determined by respondent in the amount of $10,758.71 represents credits made under petitioner's employment contract to his account on the Company's books, but which were not actually distributed to petitioner in 1941. In his deficiency notice the respondent increased petitioner's reported business income by the net amount of $10,758.71 arrived at by including in income two items, namely, "Increase in commission account $14,750.83" and "Increase in supply and repair inventory $1,937.76" and by deducting certain undisputed items, including the above-mentioned $4,200 deposit withheld by the Company. Under the petitioner's contract of employment he was to be compensated only on the basis of commissions earned and pursuant to that contract the Company's advances to him, through his drawing account, and debited to his account against unearned commissions, represented a debt owed by him to the Company. The increase of $14,750.83 in petitioner's commission account by a credit in that amount on the Company's books as of the close of the year 1941, constituted income constructively received by petitioner only to the extent of *85 $8,916.08, the amount of his indebtedness to the Commissioner thereby paid off, but the balance of such credit was not constructively received by petitioner in 1941, because it was not available to him in that year. The supply and repair inventory at petitioner's agency was owned by the Company and the increase therein of $1,937.76 at the close of the year 1941 was not taxable income to petitioner for 1941. Opinion Our findings of fact are determinative of the issues involved herein and little need be said in further exposition thereof. The respondent's determination is sustained in part and reversed in part. The facts establish that petitioner was on the cash receipts and disbursements basis of reporting his income, and the first question is whether petitioner constructively received income in 1941 because of the $14,750.83 credit to his commission account in that year as determined by respondent. Briefly stated, respondent contends that petitioner's written contract of employment, particularly paragraph 19 thereof, is controlling and that the advances to petitioner resulting in a debit balance of $8,916.08 on January 1, 1941 constituted a debt due the Company under the terms *86 of the contract, which debt was paid off by the above-mentioned credit to petitioner's account and thus petitioner constructively received $8,916.08 income in 1941. The parties have stipulated that $4,200 of such credit was not available to petitioner in 1941, but respondent further contends that the balance of the credit, or $1,634.75, was available to petitioner in 1941 and thus constructively received by him. Our findings of fact sustain respondent with respect to the $8,916.08 item. The stipulated facts and exhibits attached thereto clearly establish that petitioner's services as sales agent and his compensation therefor solely on a commission basis, during 1941 and prior thereto, were pursuant to the terms of his written contract of employment of January 1, 1939, as to which there is no proof of any modification, either written or oral. That contract clearly provides that advances to petitioner debited to his account against unearned commissions constituted a debt due the Company. Accordingly, the advances to petitioner during the years prior to January 1, 1941, amounting to $8,916.08, were not income to him in those years and he was in error in reporting them as such and, further, *87 when the credit to his account in 1941 for commissions earned in that year wiped out his indebtedness to the Company in the amount of $8,916.08 he constructively received such amount as income. However, we have found as a fact that the balance of the credit to his account, or $1,634.75, was not available to him in 1941, because such credit appeared on the Company's annual statement to petitioner as of December 31, 1941, which statement was not received by petitioner until the following January, and, further, he could not withdraw any part of his credit balance until he requested and secured the Company's permission after first securing the approval of his division manager. Accordingly that amount of $1,634.75 was not constructively received as income during 1941. Petitioner's contention that no part of the $14,750.83 credit was constructively received as income in 1941 is based on the argument that the terms of his written contract of employment do not apply to his drawing account of $100 per week; that such drawing account was allowed pursuant to a policy of the Company established by a practice outside the written contract and that pursuant to such policy his drawing account was *88 a salary or a guaranteed minimum compensation regardless of whether commissions earned ever equalled the amounts he was permitted to draw each week. Petitioner's testimony, the only evidence on this point, is not that there was actually any modification of his written contract of employment, but, in substance, is only to the effect that he regarded himself to be employed on the basis of a salary of $100 per week plus commissions. Petitioner apparently regarded himself to be so employed because he knew, as testified to by him, of the cases of two other sales agents with contracts identical with his who left the Company with a net debit balance (apparently including advances against unearned commissions similar to those made to petitioner) and that no attempts were thereafter made to collect such debit balances. Such testimony avails petitioner nothing in the face of the established facts here. The case of Kenneth Drummond, 43 B.T.A. 529, relied on by petitioner, is distinguished on its facts, for there the terms of the taxpayer's employment were that he was to be paid not less than $625 a month regardless of the amount of commissions earned; that his account would be credited *89 with commissions earned and if in excess of $625 per month he would be paid such commissions up to $1,000 per month; but that in the event earned commissions exceeded $1,000 per month such excess would be applied against prior payments which had exceeded prior earned commissions. In that case the taxpayer did not receive advances for which he was indebted to his employer; what was paid to him up to $1,000 per month was his; and whether any of his commissions would ever be applied to offset prior payments to him depended upon the contingency that he earned commissions in excess of $1,000 per month. Other cases cited by petitioner are not apposite here. On the inventory item of $1,937.76, the respondent was clearly in error, since the property involved therein was never owned by petitioner. Decision will be entered under Rule 50.