**LITTLE v. HELVERING, Commissioner of Internal Revenue.**

No. 10038.

Circuit Court of Appeals, Eighth Circuit. Feb. 11, 1935.

Benjamin H. Saunders, of Washington, D. C. (Charles D. Hamel and Lloyd Ander-

son, both of Washington, D. C., on the brief), for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals. 27 B. T. A. 1022.

It is charged (1) that the Board erred in disallowing a deduction of $56,133.28 from the taxpayer's gross income for the year 1924, claimed to be a bad debt ascertained to be worthless and charged off, or a loss sustained; and (2) that the Board erred in sustaining a negligence penalty imposed by the respondent.

The applicable statute is the Revenue Act of 1924, c. 234, 43 Stat. 253.

"Sec. 214. (a) In computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the commissioner may allow such debt to be charged off in part." U. S. C., title 26, § 955, 26 USCA § 955 (a) (4, 5, 7).

"Sec. 275. (a) If any part of any deficiency is due to negligence or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency. * * *" U. S. C., title 26, § 1055, 26 USCA § 1055 (a).

The facts relative to the claimed deduction for a bad debt or a loss are, in substance, these: Mr. Little, the petitioner, and a Mr. Hughes, both of Bismarck, N. D.,

in June, 1918, organized the Beulah Coal Mining Company, a corporation (which will be referred to as the Beulah Company), to which they transferred coal mining properties near Beulah, N. D., which they had acquired and partly developed as partners. In exchange for the properties, they received virtually all of the stock of the company, and they controlled, financed, and operated it. The operations were unprofitable, and by October, 1922, they had advanced to the company $224,375.10, or $112,187.55 each. Of the money advanced, $50,000 was represented by bonds of the Beulah Company secured by a trust deed to the Merchants' Trust & Savings Bank of St. Paul, dated June 1, 1921. The bonds had been guaranteed by the petitioner and Hughes, and were subsequently acquired and held by them. The balance of the advances to the Beulah Company was unsecured and was evidenced by book entries. While the Beulah mine was operated as late as December, 1922, it had become virtually unworkable in the summer of that year, and on October 2, 1922, a lease of the property was executed to Hughes for the benefit of both the petitioner and Hughes, who, as a partnership operating under the name of Knife River Coal Mining Company, had acquired adjacent or nearby coal lands and desired to make use of the tipple, mining apparatus, and other property of the Beulah Company useful to them in connection with their new venture. They took possession of all of the personal property of the Beulah Company under this lease and a part of its lands for right of way. It is not shown that any payments were made or credits given to the Beulah Company in accordance with the lease, and it is not clear what payments or credits, if any, the Beulah Company was entitled to receive from the partnership on that account.

In 1923 the bonds of the Beulah Company were in default, and petitioner and Hughes, who held them, caused the trustee to foreclose the trust deed upon the properties of the Beulah Company. The foreclosure sale was held on the 25th day of July, 1923. The personal property and the real estate were sold separately. The personalty was bid in for $20,000, and the real estate for $15,000. The bids were made by the trustee for the sole benefit of the petitioner and Hughes. The notice of foreclosure sale of personalty, which is a part of the record, indicates that a judgment had been procured against the Beulah Company for $55,257.73; so that apparently the sale

left a deficiency judgment against the Beulah Company of about $20,000. The practical effect of this foreclosure, as we understand it, was to vest in the petitioner and Hughes the title to all of the personal property of the Beulah Company, and title to the real estate, subject to a right of redemption in the Beulah Company, which could be exercised not later than one year from the date of the sale. After the foreclosure, the Beulah Company had no funds or property of any kind, except the equity of redemption in the real estate. Its bonded indebtedness had apparently become merged in the judgment obtained in the foreclosure proceedings, and that judgment satisfied to the extent of the $35,000 which was bid at the sale.

We do not see how, after the foreclosure sale, the amount due the petitioner and Hughes from the Beulah Company for advances made before the sale would still be $224,375.10, since $50,000 thereof was bonded indebtedness which should have been reduced by at least the $35,000 bid at the sale. Apparently petitioner treats the foreclosure sale as though it resulted in a transfer to him and Hughes of all of the property of the Beulah Company, to be applied, to the extent of its value, upon the total amount of its indebtedness to them for advances. In any event, whatever may have been the effect of the foreclosure, upon what the Beulah Company owed to Hughes and Little because of their advances to it, it is perfectly plain that they acquired all of the property of that company through the foreclosure, took possession of it, and used it in their operations during the balance of the year 1923.

In January, 1924, the partners, who, in 1922, had caused to be organized a Minnesota corporation under the name of Knife River Coal Mining Company, turned over to that company the properties acquired by them from the Beulah Company on foreclosure, together with other properties. The Beulah properties were taken over by the Knife River Company at $112,108.54, and they were carried into its books as of December 31, 1923; but the record shows that the resolutions pursuant to which these properties and other properties of the petitioner and Hughes were transferred to it, and its stocks and bonds issued to them in payment therefor, was adopted in January, 1924. The sale of the Beulah properties was fully consummated in August, 1924, by a deed of the real estate from the Mer-

chants' Trust & Savings Bank to the Knife River Company. This was after the expiration of the period within which the Beulah Company might have redeemed from the foreclosure sale of the real estate, and after a sheriff's deed had been issued to the Trust & Savings Bank therefor.

The petitioner claims that the sale of the Beulah properties by him and Hughes in 1924 to the Knife River Company fixed the amount of the loss which they sustained by reason of their advances to the Beulah Company, and that the petitioner was entitled to deduct from his gross income for the year 1924 one-half of $112,266.56, which is the difference between $224,375.10, the total amount claimed to have been advanced up to October 2, 1922, and $112,108.54, the figure at which these properties were turned over to the Knife River Company in 1924.

It seems to us that the amount of the deductible loss as calculated by the petitioner fails to give effect to the foreclosure sale and the amount bid for the Beulah properties at that sale. It is quite probable, also, as stated by the Board, that the Beulah Company was entitled, during the years 1922 and 1923, to some credit by way of compensation under the lease to Hughes for the use of its properties by the partnership.

The petitioner and Hughes are not in accord as to the amount of the loss sustained by reason of the advances. Mr. Hughes testified that the loss to the partnership was $104,375.69. Mr. Minser, who was a bookkeeper of the Beulah Coal Mining Company from March 8, 1922, to December 15, 1922, testified: "This figure of $104,375 and some odd cents represents the difference between what was due and owing Hughes and Little from what they actually received from the disposition of the Beulah Coal Mining Company assets."

The Board was of the opinion that the evidence adduced by the petitioner was insufficient to show that any actual loss was sustained by him; that it indicated that the Knife River Company, when it took over the Beulah properties, assumed the obligations of the Beulah Company to the petitioner and Hughes; and that, in any event, if there was a loss, the evidence did not show that the loss was sustained during the year 1924.

We fail to see how the sale by Hughes and Little to the Knife River Company in 1924 of the property acquired by them on July 25, 1923, at foreclosure sale for $35,000, has any tendency whatever to prove the

time and extent of their loss growing out of their advances to the Beulah Company. That sale neither lessened nor increased the ability of the Beulah Company to repay the advances which were made to it. It merely determined how much the petitioner and Hughes were to receive for the property which they acquired through foreclosure. The claim of the petitioner against the Beulah Company for repayment of advances was just as worthless at the time of the foreclosure sale in July, 1923, as it was at any time thereafter. The contention that it was the expiration of the period of redemption from the foreclosure sale which fixed the time when the loss was realized, is unsound under the circumstances of this case. After the foreclosure sale, the Beulah Company was nothing but an empty shell. It had nothing to repay advances with; it had nothing to redeem with; its property had been taken over under foreclosure by its principal stockholders and its largest creditors, in fact by the only persons who had ever furnished it any funds with which to operate.

It seems clear that whatever the petitioner and Hughes lost because of their advances to the Beulah Company, they lost in the year 1923, when, by reason of the foreclosure of the trust deed covering all of the properties of the Beulah Company, that company was stripped of its ability to repay anything to anyone. If the advances constituted a bad debt, they were ascertained to be worthless in 1923, at the time of the foreclosure sale. And it may be seriously doubted whether, even if they were a bad debt ascertained to be worthless in 1924, the petitioner has brought himself within the statute which requires that such debts be "charged off." See Fairless v. Commissioner of Int. Rev. (C. C. A. 6) 67 F.(2d) 475, 477. Compare: Shiman v. Commissioner of Int. Rev. (C. C. A. 2) 60 F.(2d) 65, 66; Squier v. Commissioner of Int. Rev. (C. C. A. 2) 68 F.(2d) 25. It is not necessary, however, to base a conclusion on that point. If the advances resulted in a deductible loss, as petitioner claims, we are satisfied that the loss was fully realized at the time of the foreclosure sale. That was the "identifiable event" which established the loss. See United States v. S. S. White Dental Mfg. Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120; Peyton Du-Pont Securities Co. v. Commissioner of Int. Rev. (C. C. A. 2) 66 F.(2d) 718, 721; Gowen v. Commissioner of Int. Rev. (C. C. A. 6) 65 F.(2d) 923, 924.

The rule is that a taxpayer seeking a deduction must be able to point to an applicable statute and to show that he comes within its terms. New Colonial Ice Co. v. Helvering, Commissioner of Int. Rev., 292 U. S. 435, 440, 54 S. Ct. 788, 78 L. Ed. 1348. And the burden of proof to establish a deductible loss and the amount of it is upon the taxpayer. A failure of proof leaves him with an unenforceable claim. Burnet, Commissioner of Int. Rev. v. Houston, 283 U. S. 223, 227, 228, 51 S. Ct. 413, 75 L. Ed. 991; Helvering, Commissioner of Int. Rev. v. Taylor, 55 S. Ct. 287, 79 L. Ed. ——, opinion filed January 7, 1935.

We think that the record indicates that the petitioner sustained a loss by reason of the advances which he made to the Beulah Company. We are not able to say what the exact amount of that loss was, but, whatever the amount was, the loss was fully realized in the year 1923 at the time of the foreclosure.

Our conclusion, therefore, is that the Board did not err in disallowing the claimed deduction from gross income for the year 1924.

The only other question presented is whether the Board was in error in sustaining the negligence penalty imposed by the Commissioner. The statute authorizes the imposition of this penalty for negligence or intentional disregard of the rules and regulations. There is no suggestion on the part of any one that the petitioner intentionally disregarded the rules and regulations. The claim is that there is substantial evidence indicating that he failed to use reasonable care in reporting his income. It is conceded that the return which he filed was not accurate, that it failed to include more than $3,000 of interest received, more than $9,000 of dividends, more than $44,000 of profits, and more than $17,000 of capital net gain. All of these items should have been included. As to the items of omitted interest, dividends, and capital net gains, the petitioner upon the hearing offered no explanation for their omission. Under the circumstances, we would hardly be justified in holding that the Commissioner had no basis for imposing the statutory penalty.

The order of the Board of Tax Appeals is affirmed.