Ｊａｍｅｓ Ｗ. Ｅｎｇｌａｎｄ, Ｊｒ., ａｎｄ Ｌｅｔａ Ｅｎｇｌａｎｄ, Ｈｕｓｂａｎｄ ａｎｄ Ｗｉｆｅ, Ｐｅｔｉｔｉｏｎｅｒｓ, *v.* Ｃｏｍｍｉｓｓｉｏｎｅｒ ｏｆ Ｉｎｔｅｒｎａｌ Ｒｅｖｅｎｕｅ, Ｒｅｓｐｏｎｄｅｎｔ.

Docket No. 69197. Filed June 29, 1960.

*Charles H. Burton, Esq.*, for the petitioners.
*Harold W. Vestermark, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge:* The first issue is whether respondent properly disallowed a deduction of $17,032.60 as an interest expense under section 23(b).

At the hearing, respondent conceded that $968.58 of the above amount was actually paid as interest and is allowable as a deduction. Respondent concedes on brief that $546.98 received in 1953 as a repayment on a loan to James Frayne was not income, and we have so found. Respondent further concedes that petitioners are not liable for the addition to tax asserted under section 294(d)(2). These concessions will be given effect to under Rule 50.

Petitioner admitted on examination that he kept and maintained no books and records of his own during 1953. He relied entirely upon the statements and notices furnished him by his two creditor banks and the banks which administered the estates in which he had an interest. The 1953 return was made solely on the basis of this information. The banks kept no special records for petitioner.

An examination of these statements and notices indicates that they contain only a minimum of information. Petitioner could have received full information upon request, but seldom, if ever, requested a full report. He did not know the extent of his indebtedness and, at best, could only approximate the amounts.

In spite of the absence of books of his own, petitioner maintains that he was on an accrual basis of accounting. He claims that the banks kept his books for him and that he could rely on their records. Such facts cannot be assumed, and petitioner's own testimony was to the effect that the banks kept no special books for him. Banks do not customarily perform such services for their clients. Cf. *John A. Brander*, 3 B.T.A. 231. Even were we so to assume, petitioner has not shown that the banks were on an accrual basis of accounting.

Respondent, on the other hand, determined and here contends that petitioner was on a cash basis. We agree with respondent and so hold for two reasons.

Section 41 of the Code provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; *but if no such method of accounting has been so employed,* or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * [Italics supplied.]

In view of petitioner's admitted failure to keep any books or records, it is obvious that he did not have a "method of accounting regularly employed in keeping the books." In such a case, the statute expressly authorizes the respondent to make the computation of net income in accordance with such method as in his opinion "does clearly reflect the income." Respondent has chosen to utilize the cash basis, and we cannot say his choice is erroneous.

Secondly, it has long been established that "a taxpayer who keeps no books or records of account can not be on an accrual basis. In such case, the cash basis is proper." *Mansuss Realty Co.*, 1 T.C. 932, 936, affd. 143 F. 2d 286 (C.A. 2) ; *John A. Brander, supra; Greengard* v. *Commissioner*, 29 F. 2d 502 (C.A. 7), affirming 8 B.T.A. 734.

During the year 1953 petitioner owed approximately $330,000 to Tradesmens. Accrued interest on this debt amounted to $9,277.08, which was claimed as a deductible expense in the income tax return for 1953. Petitioner was credited with $6,560.78 from the various estates in which he had an interest. The bank applied $5,592.20 of this amount to the payment of life insurance premiums and the balance of $968.58 to the interest due on the loans. Respondent concedes that the latter amount was properly deducted as interest.

In 1953 petitioner owed Valley approximately $56,000, including $14,000 accrued interest which had been re-added to the loan principal. The interest on this debt amounted to $3,131.90. This was claimed as a deductible interest expense in the income tax return for 1953.

The interest due was not paid in cash by petitioner. Instead, additional funds were borrowed from these banks in the amounts of the interest owed, and new notes were executed which included both the principal of the loans and the sums borrowed as interest.

Petitioner contends that the borrowing of additional funds and the execution of notes for the interest due constituted actual payment of the interest for deduction purposes.

The fatal defect in petitioner's position is that he was on the cash basis of accounting and reporting, and, as succinctly stated in *Fred W. Leadbetter*, 39 B.T.A. 629, 634,

[b]eing on the cash basis, petitioner could not deduct interest unless it was actually paid; accrued interest availed him no deduction, * * * and his right to deduct is not enhanced by his giving a new note for interest * * *

*Francis R. Hart*, 21 B.T.A. 1001, affirmed on this issue 54 F. 2d 848 (C.A. 1); *S. E. Thomason*, 33 B.T.A. 576; *Eckert* v. *Burnet*, 283 U.S. 140.

The fact that the banks considered the interest "paid" does not establish a "cash" payment entitling petitioner to a deduction for interest paid where his return is on a cash basis.

We hold, therefore, that the execution of the notes for the interest is not sufficient to permit deductions for interest within the meaning of section 23(b).

Petitioner had requested Tradesmens to apply any income credited to him first to interest and then to the life insurance. The bank, however, declined to follow his instructions. He made repeated requests, but the bank informed him that they would proceed to pay premiums before interest. The life insurance policies, on which Tradesmens paid the premiums, were held as security for petitioner's indebtedness. The bank naturally would be desirous of protecting its collateral. Thus, petitioner knew and had every reason to expect that the bank would not follow his instructions. His recourse, if any, was to enforce his instructions or otherwise obtain the cooperation of the bank. Petitioner did nothing.

Petitioner now argues that he should receive an interest expense deduction for the amount which he sought to have applied to interest but which in fact was used to pay life insurance premiums.

We need pause only to comment that deductions are permissible in the taxable year in which a cash basis taxpayer pays cash. Petitioner's "intentions" and "instructions" are not cash or a substitute

for cash, especially when petitioner knew of the bank's disregard for his instructions and did nothing.

Furthermore, the record discloses the following (p. 39):

Mr. BURTON: If the Court please, we may save some time, we are not contending that the insurance premiums are deductible, we are only contending that the interest is deductible. That may save us some time.

We think this sufficient to dispose of petitioner's contention in this respect.

The second issue is whether respondent correctly imposed additions to tax under sections 291(a), 293(a), 294(d)(1)(A), and 294(d)(2). Respondent concedes that section 294(d)(2) is not applicable.

Section 291(a)[3] adds a percentage of the taxes for failure to file the return within the time prescribed by law. The final authorized filing date here, with extensions, was June 15, 1954. The return was finally filed on August 17, 1954.

The only excuse offered was that petitioner did not receive the statements and notices from the banks in sufficient time to enable him to file the return. The statements of income are all dated in 1953, or, at the latest, January 4, 1954. The "interest" statements are dated in June 1954 but indicate that the information was provided as requested. No reason is given by petitioner for not having made the requests sooner.

Petitioner was fully aware of the necessity for filing the return on or before the last extension date. We are unable to conclude, therefore, that petitioner has shown that the failure to file the return within the time prescribed was due to reasonable cause and not due to willful neglect. Respondent's imposition of the addition to tax under section 291(a) is correct. *Charles C. Rice*, 14 T.C. 503; *Vern W. Bailey*, 21 T.C. 678.

Section 293(a)[4] provides an addition to tax if *any part* of any

---

[3] SEC. 291. FAILURE TO FILE RETURN.

(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. * * *

[4] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

(a) NEGLIGENCE.—If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable.

deficiency is due to negligence. Petitioner reported only $200 of $500 wages earned in 1953. Some tax was withheld on this amount and petitioner received a W-2 form. Petitioner also deducted $5,592.20 as interest which he knew was applied to the payment of insurance premiums, not to interest. Petitioner likewise deducted $11,440.40 as interest, although he had paid out no cash and gave only notes.

The 1953 return was made out by petitioner's agent, Schmidt, from information supplied by petitioner. The information supplied consisted of the statements and notices from the banks and the W-2 form. The W-2 form showed $500 as salary earned. The return listed only $200. The statement from Tradesmens, dated June 29, 1954, disclosed what amount would be applied toward the payment of the insurance premiums.

No evidence was introduced concerning the understatement of income and the improper deduction of the insurance premiums. Respondent's determination must accordingly be approved.

Assuming that petitioner was under the mistaken impression that the insurance premiums paid could be deducted as an expense, he has given no explanation of his failure to correct the understatement of the salary. The statute penalizes a taxpayer if *any part* of any deficiency arises through negligence not otherwise explained. Were we to concede that the errors were made by Schmidt it would not aid petitioner, since the mistakes of the agent should have been corrected by the principal. *Vern W. Bailey, supra; Irving Fisher,* 30 B.T.A. 433; *Edmond A. Hughes,* 27 B.T.A. 1022, affd. 75 F. 2d 436 (C.A. 8). We hold, in the absence of evidence showing that the respondent's determination is erroneous, that respondent correctly determined the addition to tax for negligence in filing the return.

Petitioner does not deny that he was required to file a declaration of estimated tax under section 58.[5] Petitioner has offered no evidence whatsoever which might establish the existence of any reasonable cause for his failure to file the required declaration. Consequently, we hold that respondent's addition to tax for failure to file under

---

[5] SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(a) REQUIREMENT OF DECLARATION.—Every individual * * * shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—

(1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25(b) ; or

(2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more.

section 294(d)(1)(A)[6] is correct. *Franklin S. Speicher,* 28 T.C. 938; *Harold C. Marbut,* 28 T.C. 687; *A. E. Hickman,* 29 T.C. 864.

*Decision will be entered under Rule 50.*

ORGON PULP AND PAPER COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79826. Filed June 30, 1960.

*Alfred H. Stoloff, Esq.,* for the petitioner.
*John D. Picco, Esq.,* for the respondent.

---

[6] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

(d) ESTIMATED TAX.—

(1) FAILURE TO FILE DECLARATION OR PAY INSTALLMENT OF ESTIMATED TAX.—

(A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35.