Percy S. Winfield and Nancy T. J. Winfield v. Commissioner.
Winfield v. Commissioner
Docket Nos. 92843, 2231-62.
United States Tax Court
T.C. Memo 1966-53; 1966 Tax Ct. Memo LEXIS 228; 25 T.C.M. (CCH) 305; T.C.M. (RIA) 66053; March 15, 1966
Percy S. Winfield, pro se, 6134 S. Kenwood Ave., Chicago, Ill. Nelson E. Shafer, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined deficiencies in the petitioners' income taxes as follows: Sec. 6653(a),
Year
Tax
I.R.C. 1954
1957
$322.29
1958
193.29
$ 9.66
1959
573.09
28.65
1960
712.42
35.62 These deficiencies have been reduced as the result of *229 various concessions made by the respondent before and during the trial of these cases, and though joint returns were filed, the now remaining questions are related solely to the activities of Percy S. Winfield, consequently we will refer to him as petitioner. The questions now presented are: (1) Whether petitioner was in a "trade or business" during the years 1957 and 1958; (2) whether the petitioner is entitled to nonbusiness deductions in excess of the amounts already allowed or conceded by the respondent; (3) whether the petitioner is entitled to business expenses and deductions for depreciation of property used in his business during 1959 and 1960; (4) whether the petitioner had additional unreported income during the years 1957 and 1958, and if so, the amounts of such income; and (5) whether the petitioner is liable for the negligence penalties for the years 1958, 1959, and 1960. There was no written stipulation of facts but oral stipulations were made during the trial. Such facts are so found. The petitioners, Percy S. and Nancy T. J. Winfield, husband and wife, reside in Chicago, Illinois. They filed joint Federal income tax returns for the years in issue with the district *230 director of internal revenue at Chicago, Illinois. For 1958 they also filed an amended return with the district director of internal revenue at Chicago, Illinois. Issue 1 The first issue is whether or not the petitioner was in a "trade or business" within the meaning of section 162 of the Code [1] during the years 1957 and 1958. The question arises because the petitioner seeks to deduct part of the cost of maintaining his residence and automobile during those years as expenses incurred in a "trade or business." The petitioner argues that he was in a business during the years in question because of his activities as a special investigator, as an independent income tax consultant, and as a real estate broker. The respondent contends that the petitioner's activities in these fields were not sufficiently regular, or extensive to constitute a business. We agree. During the period from 1947 to 1964 the petitioner had a real estate broker's license. At an undetermined time in 1957 the petitioner and D. T. Mathews, a real estate agent, were the brokers for the sale of a one-family *231 house. The petitioner's share of the fee for this transaction was $162.50. On February 1, 1957, the petitioner wrote a letter on behalf of the client to the "Auditor General Office" at Lansing, Michigan, for information about property deeded to the State of Michigan for the nonpayment of taxes. The record does not indicate the disposition of this matter. Also during 1957 the petitioner inserted an advertisement about his real estate activities in a church celebration publication. This was the extent of the petitioner's activity in real estate during 1957. During 1957 and 1958 the petitioner shared a business office in Chicago with four other men and there kept certain records and real estate listings. He did not pay any cash rent for this office nor did he contribute to the salary of the secretary shared by him with the other four. However, he did do part time investigating work for the other four men as consideration for the above, and paid cash for the expense of a telephone which he used. The petitioner's regular, full-time job during the years in issue was with the Board of Education of Chicago, Illinois. He also had a part-time job at the Post Office. His income from those *232 sources totaled $5,518.05 in 1957 and $6,142.36 in 1958. On his income tax return for 1957 and his original return for 1958, he did not claim any business expenses or even make any reference to an alleged business. His amended return for 1958 claimed a loss from a business, but it was not dated until after the 1959 return was executed. Turning now to petitioner's claim that he was an independent investigator during the years in issue, it appears from the record that he did some investigative work for the men with whom he shared the office but there is no proof of any specific investigations, and there is no evidence that any cash fees were earned from this work. The petitioner also avers that he was an independent income tax advisor during the years in issue, but the proof of this is equally meager. His sole evidence on this point was to introduce copies of returns which he said he had prepared for various individuals. A few of these returns were for the years 1957 and 1958 but others were not, and there is no evidence that any fees were earned or paid to him for this work. The petitioner's main argument on this issue is that he was in the real estate business during the years *233 in issue. The petitioner claims to have listed real estate for sale during these years, but there are no realiable records to confirm this. Most of the so-called listing cards are undated. Some of them bear dates as early as 1950, and there is no substantial evidence to connect any of these listings with either 1957 or 1958. The petitioner's activity as a real estate broker seems to have been very limited. He offered proof of the sale of only a single piece of property during the years in issue for which his fee was $162.50. Whether a person is carrying on a trade or business depends upon the facts in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). The phrase "trade or business" refers to extensive activity over a period of time for the purpose of producing income and a livelihood. Kerns Wright, 31 T.C. 1264, 1267 (1959), affirmed 274 F. 2d 883 (C.A. 6, 1960); McDowell v. Ribicoff, 292 F. 2d 174 (C.A. 3, 1961); Hirsch v. Commissioner, 315 F. 2d 731 (C.A. 9, 1963), affirming a Memorandum Opinion of this *234 Court. In Fahs v. Crawford, 161 F. 2d 315 (C.A. 5, 1947), the court said, at p. 317: "Carrying on a business, however, implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity." We do not think that the petitioner's alleged business activities were sufficiently extensive, continuous or regular to justify an expectation that he would earn a livelihood or even a profit during the years in issue. The record is vague about the amount of time he actually spent on his real estate activities, and it is clear that he spent most of his time as an employee of the Board of Education. Cf. Frederick A. Purdy, 12 T.C. 888, 893 (1949). We also think it significant that the majority of the expenses sought to be deducted are not directly connected with his real estate activities. James M. Osborn, 3 T.C. 603 (1944). The petitioner is trying to deduct part of the expenses of maintaining his residence and his car. We can only hold on this record that such expenses were clearly personal and nondeductible. Issue 2 This issue concerns the petitioner's right to certain nonbusiness deductions *235 for all of the years in issue. Because of concessions made during the trial, we need only consider petitioner's right to deductions for certain claimed charitable contributions and casualty and theft losses. [2]
On his original return for 1958 the petitioner claimed a deduction of $702.16 for charitable contributions. Later, in his amended return for that year, he increased this claim to $894.05. The statutory notice of deficiency for 1958 determined a deduction of $642.55, and at the *236 trial the respondent has conceded an additional $2.68 for a total of $645.23. In his return for 1960 the petitioner claimed charitable contributions of $911.28. The statutory notice of deficiency allowed this amount in full. At the trial the petitioner amended his petition to claim a total of $1,191.64 on this score. The petitioner has offered no proof of paying any of these disputed contributions in 1958 and 1960, and when questioned about the status of the alleged donees he denied knowing whether they were tax exempt. Petitioner has failed his burden of proof and we sustain the respondent. Cf. Max Kralstein, 38 T.C. 810, 819 (1962). On his return for 1957, the petitioner claimed a deduction of $500 for flood damage to his property. After inspecting this damage, a revenue agent allowed the petitioner a deduction of $250, with the right to prove a greater loss at the trial. The petitioner has introduced no evidence to sustain an additional deduction, consequently we limit such deduction to $250. For 1958 the petitioner claimed a deduction of $350 for "damage to automobile and garage and theft of materials." For 1959 he claimed two such deductions, one for $517.32 *237 for "damage to car" and another of $300 for "damage to garage and theft of materials." In 1960 he claimed three such deductions of wallet with $225.00," and $75 for the freezing of water pipes in his residence. With the exception of the claim for damage to his car in 1960, we think that the petitioner has not established his right to any of these claimed deductions. The only proof we have of these losses is the petitioner's uncorroborated testimony and we are unable to give it any weight. We chose to disbelieve the petitioner because he was extremely evasive and equivocating, his testimony was generally exaggerated and at times even fantastic. The claimed deduction for the automobile accident in 1960 merits slightly different treatment. A letter from an insurance company to the petitioner confirms that an accident did happen, and that the loss was not covered by insurance. Unfortunately the only proof of the amount of the loss was the petitioner's unsupported opinion. On his return for 1960 he claimed a deduction of $220. At the trial and on brief he argued for a deduction of $400. Applying a Cohan rule computation and bearing heavily against the petitioner for his inexact proof, *238 we allow him a deduction of $45. Issue 3 This issue involves the petitioner's right to deductions for various claimed business expenses for 1959 and 1960. The respondent has conceded that the petitioner was in business during those years. Because of our resolution of the first issue business expenses are no longer in issue in 1957 and 1958. On his returns for the years in issue the petitioner claimed such deductions for the total cost of maintaining his residence, his automobiles, and his business office. In his statutory notices of deficiency the respondent disallowed these deductions in their entirety. The relevant facts are as follows: 1. The petitioner and his wife used a 1949 Buick as their means of transportation during 1957, 1958 and 1959. Petitioner bought the automobile new on June 19, 1949, for $3,700.46 and sold it in 1960 for $25. On December 10, 1959, the petitioner purchased a 1957 Buick for $1,650. They used this car as their sole means of transportation during 1960. 2. During 1959 and 1960 the petitioner used his cars in connection with his business 25 percent of the time. The expenses for gas and oil, insurance, and repairs totaled $385.16 in 1959 and $1,138.37 *239 in 1960. 3. The petitioner's 1949 Buick had a useful life of 10 years. He estimated but did not establish a useful life of four years for his 1957 Buick. 4. During the years in issue the petitioner's residence was an eight-room house built in 1895. He bought the house on July 7, 1954, for $13,750. Of this price $1,750 is fairly allocable to the land. He estimated, but did not establish, the useful life of this house to be 15 years. The petitioner used one-third of this residence in connection with his business during 1959 and 1960. No part of the house was used exclusively for business purposes. The total expenses of maintaining the house for 1959 were $530.24 and for 1960, $679.17. 5. During the years in issue the petitioner had miscellaneous business expenses such as the supplies for his office, the telephone for his office, and the fee for his real estate broker's license. In 1959 these expenses totaled $133.58 and for 1960, $121.48. We discuss these claimed deductions under headings of the applicable sections of the Code. Section 162 The petitioner has established that the expenses of maintaining his residence during 1959 and 1960 totaled $530.24 and $679.17, respectively. *240 He testified that he used one-third of his residence for business, but also admitted that the whole house was available to the family. We conclude that part of the house was used part of the time for business purposes, but are convinced that no part of the house was so used exclusively. Using a Cohan rule computation and bearing heavily against the petitioner because the inexactitude of the record is of his own making, we conclude and hold that $53 is deductible for 1959 and $68 for 1960. The petitioner has also established that he had automobile expenses during 1959 and 1960 of $385.16 and $1,138.37, respectively. Each year involved a different car, and the petitioner testified that he used each car solely for business purposes, however, he also testified that he drove the car "To my office * * *" (obviously a personal, commuting use) and that he had repair expenses on such car while in Buffalo, New York, attending a church conference. We conclude from the entire record that the cars were used in connection with the petitioner's business 25 per cent of the time and allow deductions of $96 in 1959 and $285 in 1960. The petitioner's miscellaneous business expenses during 1959 *241 and 1960 totaled $133.58 and $121.48. These expenses were ordinary and necessary, and are deductible in full. Section 166 Petitioner claims deductions for bad debts for the years 1957, 1959 and 1960. For 1957 the amount is $35, for 1959, $646, and for 1960, $257.50. The respondent disallowed these deductions in their entirety, and we sustain such action. For 1957 the alleged bad debt arose from a transaction with Lucille Rhodes. In 1954 she promised to pay the petitioner $35 for services rendered, and petitioner contends that the debt became worthless in 1957 because Lucille left the Chicago area and moved to Detroit to live. The petitioner offered no proof, not even his own testimony, that he included the $35 in his income for 1954 or at any other time. For the years before the Court petitioner was a cash basis taxpayer. The claimed deduction cannot be allowed. Bush Terminal Buildings Company, 7 T.C. 793 (1946); section 1.166-1(e), Income Tax Regs.
For the years 1959 and 1960 the claimed bad debts also arose from upaid fees allegedly due to the petitioner, but he did not prove or even allege that he had previously included such *242 amounts in his income. It follows that the claimed deductions must be disallowed. Section 167 Petitioner claims deductions for depreciation on his residence and his automobiles for 1959 and 1960. He purchased his home in 1954 for $13,750. The value of the land was $1,750. The petitioner estimated the useful life of the house to be 15 years but produced no other evidence to corroborate this. There is no evidence in the record of the salvage value of the house. Since the petitioner used part of the house in connection with his business during 1959 and 1960, he is entitled to some deduction for depreciation. A Cohan rule computation is appropriate here, cf. Estate of E. P. Lamberth, 31 T.C. 302 (1958), and we allow him deductions of $20 per year for 1959 and for 1960. During 1959 the petitioner used a 1949 Buick Roadmaster which he bought new in 1949 for $3,700.46. He sold this car in 1960 for $25. The car was used approximately 25 per cent of the time for business purposes. In these circumstances the petitioner is entitled to some deduction for depreciation, and we allow him $90 for 1959. During 1960 the petitioner used a 1957 Buick Roadmaster which he purchased *243 on December 10, 1959, for $1,650. The petitioner estimated but did not establish a useful life of four years for this car. This seems surprising since he had just disposed of a car which had served him for more than 10 years. There is no evidence of the salvage value of this car. Using a Cohan rule computation, we allow him $80 for 1960. Issue 4 The fourth issue is whether the petitioner had unreported income during 1957 and 1958, and if so, the amount of such income. In the statutory notice of deficiency for 1958 the respondent asserted that the petitioner had unreported income of $650 for that year. This was based upon the petitioner's original tax return for 1958. In their amended return for 1958 the petitioners admit the receipt of such $650. In the statutory notice for 1957 the respondent asserted that the petitioner had unreported income of $1,200. Respondent has since conceded all but $300 of this amount, and the petitioner has acknowledged receipt of $300such. Issue 5 The fifth issue is whether the petitioners are liable for the additions to income tax for negligence under section 6653(a) of the Code for the years 1958 through 1960. Since the petitioner has failed *244 to introduce any evidence to rebut the presumptive correctness of this determination, we decide such issue for the respondent. James W. England, Jr., 34 T.C. 617, 623 (1960). Decisions will be entered under Rule 50. Footnotes
1. Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954.↩
2. It is incomprehensible to us why the respondent, on brief, continues to argue about issues which were conceded by the parties at trial. For this reason we now find it necessary to delineate the concessions. For 1957 the respondent allows all of the petitioner's claimed charitable contributions which total $594.01. For 1959 the petitioner was allowed the full amount of the charitable contributions he claimed on his return plus an additional $155. For 1957 the respondent allowed the petitioner an interest deduction of $593.72, and the petitioner has agreed to this. For 1957 the respondent allowed the petitioner a deduction of $375.56 for taxes paid, and the petitioner has also agreed to this.↩