George V. Williams and Sarah Williams v. Commissioner.
Williams v. Commissioner
Docket No. 3358-64.
United States Tax Court
T.C. Memo 1966-143; 1966 Tax Ct. Memo LEXIS 142; 25 T.C.M. (CCH) 767; T.C.M. (RIA) 66143; June 23, 1966
Virgil K. Sandefer, 15 Office Park Cir., Birmingham, Ala., for the petitioners. Robert W. Goodman, for the respondent. *143 FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent determined a deficiency in the petitioners' income taxes for the year 1959 in the amount of $6,562.62, and he also asserted a negligence penalty in the amount of $328.13. The remaining issues for our consideration are: (1) Whether the respondent was correct in computing the petitioners' income on the cash receipts and disbursements basis; (2) whether a brokerage fee of $1,085 which petitioners paid in 1959 was a deductible business expense; and (3) was any part of the underpayment of income tax due to negligence or to the intentional disregard of rules and regulations. It was stipulated that the deductibility of a $40 payment to the Internal Revenue Service on January 7, 1959, was in issue, but this has been abandoned by the petitioners. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. George V. Williams and Sarah Williams, husband and wife, filed a joint Federal income tax return for 1959 with the district director of internal revenue, Birmingham, Alabama. Sarah Williams is a party to this proceeding only because she signed *144 the joint return in issue, and George V. Williams is hereinafter referred to as the petitioner. During the period from 1955 through 1959 the petitioner was in the construction business. He built houses for other people and for his own account. The petitioner prepared his Federal income tax returns for the years 1956, 1957, 1958 and 1959 with the help of his counsel. The petitioner did not employ a regular bookkeeper during any of these years. The petitioner prepared his joint Federal income tax returns for the years 1956 and 1957 by using the cash receipts and disbursements method of accounting. The petitioner would take the total amount of business receipts received during the year and subtract from this figure the total amount of his business expenditures. The petitioner used invoices, canceled checks, check stubs, duplicate bank deposit slips and bank statements to arrive at his total receipts and expenditures. He did not make or keep any books of his own or keep any records other than those mentioned. In the years 1956 and 1957 the petitioner completed and realized his money on all of the houses he built in the same year he started them. This made it comparatively easy *145 for him to compute his total profit for the year by simply adding his total receipts from each house and subtracting therefrom his total expenditures; the resulting figure was his profit or his loss on the house. His tax returns for 1956 and 1957 were prepared by this method. The calendar year 1958 was an unusual one for the taxpayer in that he did not complete or finally dispose of any houses, although he had several houses under construction at the end of the year. He had both receipts and expenditures as to these houses during 1958 but he reported neither on the joint return filed for such year. Such return did not contain any information about beginning or ending inventories, but it did bear the statement: The taxpayer had several houses under construction during 1958, but none were sold in 1958. At the end of 1958 the petitioner had three houses under construction; they are hereinafter referred to as the Howton house, the Gresham house, and the Biggars house. The petitioner was building the Howton and Gresham houses under contracts with private persons, but he was building the Biggars house for his own account as a speculative investment. During 1958 the petitioner acquired *146 an option from Minnie Malone to purchase the lot upon which the Biggars house was to be constructed. Under this option agreement Malone divested herself of all rights, title and interest in and to said lot, unless and until the petitioner failed to exercise his option. The petitioner started construction of this house during 1958 and spent about $16,000 on it in that year. On February 26, 1959, the petitioner exercised his option and purchased the lot from Malone for $3,300. Shortly thereafter the petitioner sold the lot and the house to Biggars for $21,756.37. During 1959 the petitioner completed the three houses which were in progress on December 31, 1958. In addition he started and finished in that year a house hereinafter known as the Smith house. The petitioners' joint income tax return for 1959 shows $5,000 as net earnings from business, which is stated to be commissions. Such return contains no information concerning total receipts, inventory, merchandise purchased, cost of labor, materials and supplies, cost of goods sold, or of any business deductions claimed nor is there any information whatever on the return to show that the petitioner received any income from his *147 business as a contractor or paid any expenses in connection with that business. By the petitioner's alleged method of accounting the four houses built during 1958 and 1959 would probably have produced a net loss. The respondent audited the petitioners' joint returns for the years 1958 and 1959. By using the cash receipts and disbursements method the respondent found that the petitioner's expenditures in his construction business for 1958 totaled $49,132.24 and that his receipts under contracts for the Gresham and the Howton houses totaled $21,650.73. These amounts are now stipulated. For 1959, the year in issue, the petitioner's receipts exceeded his expenses by a considerable margin. He received $66,202.06 for the construction of houses in 1959, and his ordinary and necessary business expenses in connection with his construction business in 1959 totaled $45,480.04. The respondent determined the difference to be taxable business income and after making several other adjustments computed the deficiencies accordingly. Findings on Issue 2 It is stipulated that petitioner paid a brokerage fee of $1,085 in June 1959 in connection with the Smith property mentioned above. Respondent's *148 determination does not allow this as a deductible business expense. Respondent did not cross-examine petitioner as to this item, and he makes no argument concerning it on brief. We found petitioner's testimony as to this item to be credible, and consequently find that the fee in fact consisted of payment by petitioner of the then usual number of so-called discount points in connection with the GI loan which was made in connection with the sale of this house. We find further that this payment was an ordinary and necessary business expense and properly deductible by petitioner in 1959. Findings on Issue 3 The petitioner paid a considerable number of his personal expenses by checks written on his business bank accounts. Petitioner kept no books during the years 1958 and 1959, and the only records which he retained were his duplicate deposit slips, check stubs, canceled vouchers, statements from his banks, and invoices furnished him by those from whom he purchased building materials. The petitioner is a college graduate. His returns had been audited as early as 1957, and he was aware of his duty to keep adequate books and records. Opinion We first dispose of Issue 2 by reference *149 to our findings which make this June 1959 payment of $1,085 properly deductible as a business expense. Issue 1 is whether the respondent correctly computed the petitioner's income for 1959 by using the cash receipts and disbursements method. The petitioner argues that for the years immediately preceding the year in issue, he computed his income on a completed contract method and that the respondent has improperly change his accounting method. The petitioner also contends that the cash receipts and disbursements method does not clearly reflect his income. The respondent avers that the petitioner was on the cash receipts method of accounting prior to 1959, that he has not changed the petitioner's accounting method, and that the cash receipts method clearly reflects his income for the year. The respondent has persuaded us on this issue. Section 446 of the Internal Revenue Code of 1954, [1] set out in pertinent part in the margin, provides that taxable income shall be computed under the method of accounting the taxpayer uses in keeping his books. The permissible methods of accounting are the cash receipts and disbursements method, an accrual method, or any other *150 method permitted by the Code or the regulations. Section 446(e)[2] provides that a taxpayer may not change his accounting method without first securing the consent of the Secretary unless such change is otherwise expressly provided for in the Code. The petitioner *151 argues that he has always used a completed contract method of accounting. He is not contending that a change from the cash receipts method to the completed contract method is expressly provided for in the Code, and seems to admit that such a change could only be made at the option of the taxpayer and with the consent of the Commissioner. We think that the record amply supports the respondent's conclusion that the petitioner computed his income on the cash receipts method. The only records he used to determine his income were bank statements, invoices, canceled checks, check stubs, and duplicates of deposit slips. He appears to have conducted his business on a purely cash basis without using accounts receivable, accounts payable, or inventories. The petitioner *152 alleged at the hearing that he kept books in that he kept the invoices and checks relating to a particular house in a separate file. He did not see fit to introduce these files into evidence. He did submit a list of expenses attributable by him to the construction of the Biggars house, but this was prepared immediately prior to the trial, five years after the house was built and sold, and it was made up expressly for the purpose of being introduced into evidence in this case. With such an absence of records, the petitioner could only have determined his income by using the cash receipts and disbursements method. James W. England, Jr., 34 T.C. 617 (1960). It has been long recognized that where a taxpayer has no books and records, he is on the cash receipts and disbursements basis. John A. Brander, 3 B.T.A. 231 (1925); Wilson Marks, 6 B.T.A. 729 (1927). At the hearing and on brief the petitioner alleges that he computed his income and filed his returns using a completed contract accounting method. The completed contract method is a variation of a strict accrual method in that items of income and expense, although recorded in primary accounts *153 when accrued or incurred, are not carried into profit or loss of the business until the underlying contracts are completed. A separate account is kept for each contract. In the instant case there is a complete absence of any records showing accounts payable, accounts receivable, inventories, work in progress or any other items commonly associated with an accrual method. Section 1.451-3, Income Tax Regs., authorizes the use of the completed contract method. The regulation provides that the taxpayer can change to or from a long-term contract method of accounting only with the consent of the Commissioner, relying upon section 446(e) referred to earlier, and paragraph (e) of section 1.446-1, Income Tax Regs. There is no evidence in this case to indicate that the taxpayer even requested the consent of the Commissioner. The applicable regulation also provides that when a taxpayer reports income under a long-term contract method, he should attach a statement to that effect to his return. The petitioner's joint return for 1959 is devoid of any reference to a completed contract method. We also note that section 441(g) [3] precludes the use *154 of the completed contract method in the circumstances of this case; since the taxpayer kept no books, he is bound to report income on a calendar year basis. The respondent did not change the petitioner's accounting method in computing his taxable income for 1959. In fact the agent followed the petitioner's normal accounting method. The respondent used such records of receipts and expenditures as the petitioner himself had used. In the absence of books and records the use of bank deposits as a method of determining income is entirely proper. Hallabrin v. Commissioner, 325 F. 2d 298 (C.A. 6, 1963), affirming a Memorandum Opinion of this Court. The respondent computed the petitioner's taxable income for 1958 *155 and 1959 by attributing receipts to the year in which received and allowing expenses in the year in which paid. In the agent's expert opinion the cash method clearly reflected the petitioner's income. Although the respondent's audit was not a model of thoroughness and precision, his task was greatly complicated by the petitioner's business practices. For example some of the deposits to the petitioner's accounts were loans, but the agent took account of this in his audit. Some of the checks written on the petitioner's accounts were for personal expenses and in segregating the personal from the business expenses, the respondent's agent relied upon what the petitioner told him. The agent used the petitioner's bank statements and canceled checks without making an independent verification of any of them. The petitioner alleges that the respondent's failure to verify independently the various items used in his audit shows that the audit was superficial so as to vitiate its presumptive correctness. Absent any proof of error or even allegation of specific errors, we sustain the respondent. On this issue the petitioner makes a further argument to the effect that the Biggars house was a *156 capital asset and that the expenses incurred on it in 1958 must be added to his basis in the property and deducted from income in 1959 when the house was sold. In his audit the respondent included the expenses made on the Biggars house in 1958 in the petitioner's general business expenses for that year. The petitioner argues that these expenses must be deducted from his income in 1959 when the house was sold. Even though the petitioner built the Biggars house for his own account, there is no evidence that it was not property "held for sale in the ordinary course of his business." Section 1221(1) of the Code. The petitioner did not treat his expenses on this house any differently from the expenses incurred on his other houses. The schedule, introduced into evidence which showed the expenses of the Biggars house, was not complied until shortly before the trial; a full five years after the house was sold. We note further that the petitioner did not claim any capital gain or loss from the sale of the Biggars house on his joint return for 1959. Cf. Investors Diversified Services, Inc., 39 T.C. 294, 315 (1962), affirmed 325 F. 2d 341 (C.A. 8, 1963). It was *157 stipulated in the instant case that the petitioner was "a contractor engaged in building residences on his own account and for others." It is of course settled that a person may be a dealer in a particular type of asset and yet hold assets of the same nature for investment purposes. Investors Diversified Services, Inc., supra; George R. Kemon, 16 T.C. 1026, 1033 (1951). However, this record falls far short of sustaining a conclusion that the taxpayer built the Biggars house as a capital investment, apart from the ordinary course of his business. Cf. James E. Kesicki, 34 T.C. 675 (1960); Heebner v. Commissioner, 280 F. 2d 228 (C.A. 3, 1960), affirming 32 T.C. 1162 (1959). The final issue is whether any part of the underpayment of tax was due to negligence or to intentional disregard of rules and regulations. We think it was. It is too well established to require citation that any person subject to income tax shall keep permanent books of account for deductions, credits or other matters required to be shown on an income tax return. The petitioner offered no convincing explanation for his lack of adequate records. *158 He is a college graduate and an experienced businessman. His returns, and the returns of companies with which he was connected, were audited prior to the years in issue, nevertheless, he took no steps to improve his records in any regard. The respondent had to separate business from personal checks written on the petitioner's business bank accounts and also determine which deposits were non-income items. The petitioner made no effort to keep his personal expenses separate from his business expenses. These circumstances fully sustain the imposition of the negligence penalty. H. A. Hurley, 22 T.C. 1256 (1954), affd. 233 F. 2d 177 (C.A. 6, 1956); Leslie A. Sutor, 17 T.C. 64 (1951). Decision will be entered under Rule 50. Footnotes
1. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. (a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. (c) Permissible Methods. - Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting - (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.↩
2. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * *
(e) Requirement Respecting Change of Accounting Method. - Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.↩
3. SEC. 441. PERIOD FOR COMPUTATION OF TAXABLE INCOME. * * *
(g) No Books Kept; No Accounting Period. - Except as provided in section 443 (relating to returns for periods of less than 12 months), the taxpayer's taxable year shall be the calendar year if - (1) the taxpayer keeps no books; (2) the taxpayer does not have an annual accounting period; or (3) the taxpayer has an annual accounting period, but such period does not qualify as a fiscal year.↩