WILLIAM H. REID, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reid v. Commissioner
Docket No. 2526-72.
United States Tax Court
T.C. Memo 1974-185; 1974 Tax Ct. Memo LEXIS 133; 33 T.C.M. (CCH) 800; T.C.M. (RIA) 74185; July 16, 1974, Filed. William H. Reid, pro se. Patrick E. Whelan, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Year
Deficiency
Addition to Tax (Sec. 6653(a), I.R.C. 1954) 1968
$ 3,414.02
170.70
1969
$18,941.52
$947.08
Several concessions have been made, [1] *134 the issues remaining for our decision are as follows: 1. Whether petitioner realized additional income as determined by respondent through use of the bank deposits method of income reconstruction; and 2. Whether any part of the underpayment for each of the years 1968 and 1969 was due to "negligence or intentional disregard of rules and regulations" within the meaning of section 6653(a). [2]
FINDINGS OF FACT William H. Reid (hereinafter petitioner) was a resident of Brooklyn, New York, at the time he filed his petition herein. During 1968 and until October 2, 1969, he was employed by the City of New York Fire Department as a Fireman 1st Grade. He reported income from this source in the amounts of $9,842.80 and $9,192.72 on his returns for 1968 and 1969, respectively. During the years in issue, petitioner was also self-employed *135 as a licensed real estate broker. As such, he listed apartments and houses for rent or sale, showed apartments and houses to prospective tenants or purchasers, attempted to negotiate rental and sales transactions, and appeared at the signing of contracts of sale and at closings of titles. If a prospective tenant rented an apartment, petitioner would keep one month's rent, often the amount of the deposit, as his commission. In addition, the tenant would usually pay petitioner an additional month's rent in advance and a security deposit equal to one month's rent. These additional sums were paid over to the owner of the building. The broker's commission was evenly divided between petitioner and any sales person responsible for the rental of the property or for the referral of the tenant. The houses which petitioner sold were in the $17,000-to-$20,000 range. Petitioner received a 6-percent commission on the sales price, a portion of which would be paid to the sales person responsible for the listing and/or sale. In addition to these activities, petitioner also engaged in real estate speculation. He and other individuals would buy a house for cash, make the necessary improvements *136 to qualify for FHA financing, and then sell the house. Petitioner served as banker for the other persons who were involved with him in these speculative activities. As such, he would receive the cash, make the purchases and payments for improvements, and then receive the sales proceeds and distribute such sums to the respective participants. On April 19, 1968, petitioner was involved in an automobile accident. He was admitted to Cumberland Hospital in Brooklyn, where he was found to have had multiple lacerations and abrasions of the forehead as well as a cerebral concussion. On April 24, 1968, when he was discharged from the hospital, his condition was determined to be good. Petitioner was placed on sick leave from the Fire Department for 59 days, and then on light duty for 10 months. While on light duty, he performed clerical services. For about 2-1/2 months prior to his retirement on disability from the New York City Fire Department, effective October 2, 1969, petitioner was on terminal leave from the Department. The medical board of the Fire Department determined that petitioner should be retired because he was not capable of traveling by public conveyance and because *137 he was in danger of falling and seriously injuring himself due to his unsteadiness and fear of falling. Despite the automobile accident, petitioner continued to receive income from his real estate business because a sales person in his real estate office and another associate continued its activities. During 1968 and 1969, petitioner maintained a checking account, No. X-X5782, at Manufacturers Hanover Trust Company, Brooklyn, New York. During these years, petitioner's only sources of funds were his salary from the Fire Department and his earnings as a real estate broker. All funds from these sources were deposited in this checking account. Deposits to this account totaled $23,466.92 and $48,965.47 during 1968 and 1969, respectively. Petitioner used notations made on his 1968 and 1969 desk calendars to compute his gross income from his real estate business for those years. These calendars were disposed of at the end of each year. While petitioner retained canceled checks to verify his claimed business expenses, he disposed of those checks which would substantiate claimed disbursements to other parties.Although he often gave receipts for deposits he received for rental apartments, *138 he had no copies for presentation at trial. On Schedule C of his income tax returns for 1968 and 1969, petitioner reported gross income of $6,830 and $8,000, respectively, from his real estate brokerage business. Due to the absence of adequate records, respondent, in his statutory notice of deficiency, computed petitioner's taxable income for 1968 and 1969 on the basis of bank deposits made during those years. Accordingly, based on the following computations, he increased petitioner's taxable income: Years
1968
1969 Total deposits [1]
$23,953.92
$49,515.00
Less: Gross receipts reported (from real estate business)
$6,830.00
$8,000.00
Proceeds on sale of stock
2,200.00
Net salary (after withholding) 7,535.91 6,653.84 Total explained sources 16,565.91 14,653.84
Unexplained deposits deemed additional income $ 7,388.01 $34,861.16
*139 ULTIMATE FINDINGS OF FACT 1. Petitioner received additional taxable income from his real estate business in the amounts of $5,600 and $15,000 during 1968 and 1969, respectively, as determined by unexplained deposits to his checking account, adjusted by disbursements made to others. 2. Petitioner's underpayment of tax for 1968 and 1969 was due, in part, to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). OPINION In view of petitioner's failure to maintain adequate accounting books and records of his real estate brokerage income, respondent was justified in resorting to the bank deposits method of income reconstruction. Louis Halle, 7 T.C. 245, 250 (1946), affd. 175 F.2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950). Employing a variation of that method, respondent started with gross deposits, deducted reported income and identified nonincome items included in the deposits, and treated the remaining unexplained deposits as taxable income. This procedure cast upon petitioner the burden of showing that the unexplained deposits were not taxable income. Petitioner steadfastly *140 maintains that the deposits so treated as taxable income were nontaxable amounts which he held for and paid to others. Such amounts, he argues, represented shares of the real estate commissions belonging to his sales personnel; rental security deposits received on behalf of the apartment owners he represented; sums received from others for real estate speculation (used to purchase houses and to pay for improvements thereto) and sums received from the sales of such houses, held pending disbursement to his fellow speculators; and mortgage monies received in connection with his sales of houses, including "binder fees," and the like. To support his testimony, petitioner introduced lengthy schedules in which he undertook to explain the nature of the deposits which he claims were not taxable. We are satisfied, from a consideration of the record as a whole, that some of the deposits in petitioner's accounts are nontaxable. Indeed, respondent fairly states in his brief that "there is probably some merit to * * * [petitioner's] contention that he was a conduit for a portion of his deposits." On the other hand, cross-examination of petitioner revealed that he had no records to substantiate *141 his characterizations of the numerous deposits and that his explanations in Court of individual items were often not consistent with the explanations given agents of the Internal Revenue Service during the course of their investigations. Further, he admitted that he had no personal recollection of specific items. For these reasons, we cannot accept petitioner's schedules as accurate. However, to avoid a harsh and unrealistic result, we think an estimate must be made, in the light of the entire record, of the amounts omitted from petitioner's income. Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). Our Ultimate Findings reflect our best judgment as to the amounts of these omissions. Respondent's determination that at least a part of the underpayment for each of the years at issue was due to negligence or intentional disregard of the rules and regulations is prima facie correct. Rule 142, Tax Court Rules of Practice and Procedure. Since petitioner presented no evidence to the contrary, he is liable for the additions to tax on the underpayments determined above. James S. Reily, 53 T.C. 8, 14 (1969); James W. England, Jr., 34 T.C. 617, 623 (1960). *142 Petitioner's underpayment of his Federal income tax for 1968 and 1969 was due, in part, to his failure to maintain adequate records of his real estate business. Failure to keep such records as would enable him to file correct returns violates the express requirement of section 6001 of the Code and of sections 1.446-1(a) (4) and 1.6001-1(a) and (e), Income Tax Regs. We need not decide whether such failure resulted from negligence or intentional disregard of these rules and regulations, for in either case petitioner is liable for the additions to tax. For these reasons, the additions to tax must be sustained. To reflect the foregoing and the concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Petitioner conceded the disallowance of a casualty loss for 1968 of $1,850, and respondent conceded that petitioner's total bank deposits for 1968 and 1969 were $23,466.92 and $48,975.47, respectively. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. ↩
1. At trial, respondent conceded that petitioner's bank deposits for 1968 and 1969 were $23,466.92 and $48,975.47, respectively. The revised figure for 1969 should be adjusted downward to reflect a $10 deposit made on Jan. 7, 1970, which was inadvertently included. $945 of the 1969 deposits represents disability payments which are exempt from taxation. Sec. 104, I.R.C. 1954↩.